SYKES, Circuit Judge.
Tony Hurlburt and Joshua Gillespie pleaded guilty in separate cases to unlawfully possessing a firearm as a felon. See *718 18 U.S.C. § 922(g)(1). Their appeals raise the same legal issue, so we’ve consolidated them for decision. To calculate the Sentencing Guidelines range in each ease, the district court began with U.S.S.G. § 2K2.1(a), which assigns progressively higher offense levels if the defendant has one or more prior convictions for a “crime of violence.” The term “crime of violence” is defined in the career-offender guideline and includes “any offense ... that ... is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” Id. § 4331.2(a)(2) (2014) (emphasis added). The highlighted text is known as the “residual clause.”
The residual clause in § 4131.2(a)(2) mirrors the residual clause in the Armed Career Criminal Act (“ACCA”), which steeply increases the minimum and maximum penalties for § 922(g) violations. 18 U.S.C. § 924(e)(2)(B). One year ago the Supreme Court invalidated the ACCA’s residual clause as unconstitutionally vague. Johnson v. United States, — U.S. -, 135 S.Ct. 2551, 2563, 192 L.Ed.2d 569 (2015). The question here is whether Johnson's holding applies to the parallel residual clause in the career-offender guideline. An emerging consensus of the circuits holds that it does. See infra pp. 724-25.
In this circuit, however, vagueness challenges to the Sentencing Guidelines are categorically foreclosed. Circuit precedent — namely, United States v. Tichenor, 683 F.3d 358, 364-65 (7th Cir.. 2012)— holds that the Guidelines are not susceptible to challenge on vagueness grounds. But Tichenor was decided before Johnson and Peugh v. United States, — U.S.-, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013), which have fatally undermined its reasoning. Accordingly, we now overrule Tiche-nor. Applying Johnson, we join the increasing majority of our sister circuits in holding that, the residual clause in § 4B1.2(a)(2) is unconstitutionally vague.
I. Background
Tony Hurlburt was charged in a two-count indictment with possessing a firearm as a felon, see § 922(g)(1), and possessing a short-barreled shotgun, see 26 U.S.C. §§ 5841, 5845(a)(2), and 5861(d). He pleaded guilty to the felon-in-possession count; the second count was dismissed.
Under the Sentencing Guidelines, the offense level for the crime of unlawful firearm possession depends in part on the defendant’s criminal history. For Hurl-burt’s crime the base offense level ordinarily is 18. § 2K2.1(a)(5). But if the defendant has a prior conviction for a “crime of violence or a controlled substance offense,” the base offense level is 22. § 2K2.1(a)(3). For a defendant with two or more prior convictions of either type, the base offense level jumps to 26. § 2K2.1(a)(l).
Application Note 1 to § 2K2.1 incorporates the “crime of violence” definition in the career-offender guideline, which reads:
(a) The term “crime of violence” means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
U.S.S.G. §4B1.2(a) (emphasis added). The highlighted text is known as the “residual clause.”
Hurlburt has a prior conviction for armed burglary, and at sentencing he con *719 ceded that this conviction qualifies as a predicate crime of violence. The government argued that another of Hurlburt’s prior convictions — for discharging a firearm into a building or vehicle, see Wis. Stat. § 941.20 — should also count as a crime of violence. More particularly, the government argued that this second conviction qualified under § 4B1.2(a)(2)’s residual clause. Over Hurlburt’s objection the district judge accepted this argument.
With two predicate convictions for crimes of violence, Hurlburt’s base offense level was 26, and the recommended sentencing range was 84-105 months. The judge imposed a below-range sentence of 72 months. Without the second career-offender predicate, the Guidelines range drops to 57-71 months.
In an unrelated case in the same district, Joshua Gillespie was indicted for unlawfully possessing a firearm as a felon, and he too pleaded guilty. Gillespie has a prior conviction for fleeing an officer. See id. § 346.04(3). The district judge counted this conviction as a predicate crime of violence under the residual clause, which increased Gillespie’s base offense level to 20. § 2K2.1(a)(4). The resulting Guidelines range was 92-115 months, and the judge imposed a below-range sentence of 84 months. Without the career-offender predicate in the mix, the Guidelines range drops to 51-63 months.
Hurlburt and Gillespie appealed and immediately asked us to suspend briefing to await the Supreme Court’s decision in Johnson, which raised the question whether the residual clause in the ACCA’s definition of “violent felony” — a mirror image of the residual clause in §4B1.2(a)(2) — is unconstitutionally vague. We held the cases for Johnson and reinstated briefing after the Supreme Court issued its opinion. A panel heard argument in both appeals on the same day.[1] The panel prepared an opinion proposing to overrule Tichenor and circulated it to the full court in accordance with Circuit Rule 40(e). An en banc vote followed, and a majority of the court approved. This, then, is the opinion of the en banc court.[2] See Buchmeier v. United States, 581 F.3d 561 (7th Cir. 2009) (using the same procedure).
II. Discussion
In Johnson the Supreme Court held that the ACCA’s residual clause is too vague to satisfy minimum requirements of due process. 135 S.Ct. at 2563. Hurlburt and Gillespie argue that Johnson’s holding applies to the identically phrased residual clause in § 4B1.2(a)(2), which was used in their cases to increase the base offense level and thus the recommended sentencing range under the Guidelines. The Johnson argument is new on appeal, so our review is for plain error. Henderson v. United States, — U.S. -, 133 S.Ct. 1121, 1124, 185 L.Ed.2d 85 (2013); Fed. R. CRiM. P. 52(b). Under Rule 52(b) we may correct a forfeited error if (1) the error is “plain”; (2) affects the defendant’s “substantial rights”; and (3) “seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings.” Henderson, 133 S.Ct. at 1126-27 (quotation marks omitted).
Johnson was not yet decided when the defendants were sentenced, but plain- *720 error review asks whether the error is “plain” at the time of appellate review. Id. at 1130. The defendants maintain that the Johnson error is plain: The two residual clauses are identical, and because the ACCA’s residual clause is unconstitutionally vague, it necessarily follows that the residual clause in § 4B1.2(a)(2) is also unconstitutional.
The logic is compelling, but our decision in Tichenor stands in the way. Tichenor held that the Guidelines cannot be challenged on vagueness grounds. 683 F.3d at 364-65. The defendants maintain that Tichenor has been fatally undermined by the Supreme Court’s decisions in Johnson and Peugh. The government agrees, so the parties join forces in asking us to overrule Tichenor, apply Johnson, and invalidate the residual clause in § 4B 1.2(a)(2) as unconstitutionally vague.
Of course the parties’ agreement doesn’t relieve us of our obligation to resolve the question ourselves. Sibron v. New York, 392 U.S. 40, 58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Before proceeding, however, we pause to note two important recent developments. First, the Sentencing Commission has amended the Guidelines to delete § 4B1.2(a)(2)’s residual clause in light of Johnson; the amendment became effective August 1, 2016. 81 Fed. Reg. 4741, 4742 (2016). Second, the Supreme Court has granted certiorari in a case on collateral review to address the precise question presented here: whether Johnson’s holding applies to the residual clause in § 4B1.2(a)(2). Beckles v. United States, 616 Fed.Appx. 415 (11th Cir. 2015), cert. granted, — U.S. -, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016)). Beckles will be heard in the Court’s upcoming term and raises additional issues unique to its facts and procedural posture. The Court’s decision is many months away, so we think it best not to hold these cases for Beckles.
A. Johnson and § 4B1.2(a)(2)’s Residual Clause
The Due Process Clause[3] prohibits the government from depriving a person of life, liberty, or property “under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.” Johnson, 135 S.Ct. at 2556. Johnson addressed persistent vagueness concerns about the residual clause in the ACCA’s definition of “violent felony.” The Act increases the minimum and maximum penalties for various firearm-possession offenses if the defendant has three prior convictions “for a violent felony or a serious drug offense.” 18 U.S.C. § 924(e)(1). The Act defines the term “violent felony” as follows:
[A]ny crime punishable by imprisonment for a term exceeding one year ... that—
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a. serious potential risk of physical injury to another....
§ 924(e)(2)(B) (emphasis added). The highlighted text is the residual clause; the residual clause in the career-offender guideline is a carbon copy.
The Court began its analysis in Johnson by reaffirming the principle that the Constitution’s prohibition of vague laws applies “not only to statutes defining elements of crimes, but also to statutes *721 fixing sentences.” 135 S.Ct. at 2557 (citing United States v. Batchelder, 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979)). Before continuing the doctrinal analysis, the Court first explained that the residual clause mandates a two-step categorical approach for classifying crimes as violent felonies. In the first step, the sentencing court must evaluate the predicate crime of conviction, hypothesizing “the kind of conduct that the crime' involves in ‘the ordinary case,’ ” rather than looking to the actual facts of the underlying case; in the second step, the court must assess whether this hypothesized “ordinary” case of the crime “presents a serious potential risk of physical injury.” Id.
These two features of the residual clause, the Court said, “conspire to make it unconstitutionally vague.” Id. First, the clause “leaves grave uncertainty about how to estimate the risk posed by a crime” because “[i]t ties the judicial assessment of risk to a judicially imagined ‘ordinary case’ of a crime, not to real-world facts or statutory elements.” Id.; see also id. (“How does one go about deciding what kind of conduct the ‘ordinary case’ of the crime involves? ‘A statistical analysis of the state reporter? A survey? Expert evidence? Google? Gut instinct?’” (quoting United States v. Mayer, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc))). Second, the residual clause “leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony.” Id. at 2558.
“By combining indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony, the residual clause produces more unpredictability and arbitrariness than the Due Process Clause tolerates.” Id. The Court noted as well that the residual clause had persistently resisted judicial efforts — by the Justices themselves and the lower courts — to settle on a stable construction. Id. at 2558-63. This interpretive struggle, the Court said, was a “failed enterprise,” id. at 2560, and “the experience of the federal courts leaves no doubt about the unavoidable uncertainty and arbitrariness of adjudication under the residual clause,” id. at 2562.
The clause’s “hopeless indeterminacy,” the Court concluded, “both denies fair notice to defendants and invites arbitrary enforcement by judges.” Id. at 2557-58. The Court called a halt to the long-running interpretive battle and held that “imposing an increased sentence under the [ACCA’s] residual clause ... violates the Constitution’s guarantee of due process.” Id. at 2560, 2563.
As we’ve explained, § 4B1.2(a)(2)’s definition of “violent felony” contains the same residual clause, and we interpret the two provisions interchangeably, using the same categorical approach that Johnson found impermissibly indeterminate. See, e.g., United States v. Griffin, 652 F.3d 793, 802 (7th Cir. 2011); United States v. Spells, 537 F.3d 743, 749 n.1 (7th Cir. 2008). So unless the Guidelines are immune from challenge on vagueness grounds, it follows inexorably from Johnson that the residual clause in §4B 1.2(a)(2) is also unconstitutionally vague. See United States v. Vivas-Ceja, 808 F.3d 719, 722-23 (7th Cir. 2015) (applying Johnson to the similarly phrased residual clause in the “crime of violence” definition in 18 U.S.C. § 16(b)).
B. Tichenor
Tichenor held that the Guidelines are immune from vagueness challenges, but that conclusion is on shaky ground after Johnson and Peugh. Our decision in Tiche-nor rested on two premises. First, we reasoned that vagueness doctrine doesn’t apply to the Guidelines because they do not *722 declare any conduct illegal; they’re just “directives to judges for their guidance in sentencing.” Tichenor, 683 F.3d at 364 (quoting United States v. Wivell, 893 F.2d 156, 160 (8th Cir. 1990)). The second premise overlaps the first: We reasoned that vagueness doctrine doesn’t apply because United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), demoted the Guidelines from “rules to advice.” Tichenor, 683 F.3d at 364 (quotation marks omitted). Because the Guidelines are merely advisory, a defendant has no due-process expectation that he will be sentenced within the recommended range, id. (citing Irizarry v. United States, 553 U.S. 708, 713-14, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008)), and he “cannot rely on them to communicate the sentence that the district court will impose,” id. at 365.
Johnson conclusively refutes Tichenor’s first premise. Citing Batchelder, 442 U.S. at 123, 99 S.Ct. 2198, the Court confirmed that vagueness doctrine applies to sentencing provisions as well as laws declaring conduct illegal. Johnson, 135 S.Ct. at 2557. We touched on Batchelder in Tichenor but dismissed it as irrelevant, construing its reference to “vague sentencing provisions” as “mere dictum.” 683 F.3d at 365. We now know the Supreme Court sees things differently; the Constitution’s protection against vague laws is not limited to laws defining criminal-liability. As far as vagueness doctrine is concerned, it makes no difference that the Guidelines deal exclusively with sentencing.
Tichenor's second rationale has been fatally undermined by the Court’s decision in Peugh. There the Court held that the Guidelines, even though advisory, are subject to the limits imposed by the Ex Post Facto Clause. Peugh, 133 S.Ct. at 2077-78. A district judge in Northern Illinois had calculated Peugh’s sentencing range under the version of the Guidelines in effect at the time of sentencing, as required by 18 U.S.C. § 3553(a)(4)(A)(ii), and this newer version yielded a higher range than the version in effect at the time of the crime. Id. at 2078-79. Peugh objected, arguing that applying the harsher version of the Guidelines promulgated after he committed the crime violated his rights under the Ex Post Facto Clause. Based on our circuit precedent, the district judge rejected the argument, and we affirmed. United States v. Peugh, 675 F.3d 736, 741 (7th Cir. 2012) (citing United States v. Demaree, 459 F.3d 791 (7th Cir. 2006)). The Supreme Court reversed, finding an ex post facto violation.
The Ex Post Facto Clause prohibits, among other things, “[ejvery law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.” Peugh, 133 S.Ct. at 2081 (quoting Colder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798) (opinion of Chase, J.)). The “touchstone of [the Ex Post Facto Clause] inquiry is whether a given change in law presents a sufficient risk of increasing the measure of punishment attached to the covered crimes.” Id. at 2082 (internal quotation marks omitted).
As the Court explained in Peugh, the Ex Post Facto Clause “ensures that individuals have fair warning of applicable laws and guards against vindictive legislative action.” Id. at 2085. And “[ejven where these concerns are not directly implicated, ... the Clause also safeguards ‘a fundamental fairness interest ... in having the government abide by the rules of law it establishes to govern the circumstances under which it can deprive a person of his or her liberty or life.’ ” Id. (quoting Carmell v. Texas, 529 U.S. 513, 533, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000)); see also Miller v. Florida, 482 U.S. 423, 429, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (explaining that the Ex Post Facto Clauses “as *723 sure that federal and state legislatures [are] restrained from enacting arbitrary or vindictive legislation” and that “legislative enactments give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed”) (internal quotation omitted).
Crucially here, the government argued in Peugh that because the post -Booker Guidelines are advisory, they “lack sufficient legal effect” to be considered “law” for purposes of the Ex Post Facto Clause. Peugh, 133 S.Ct. at 2085; id. at 2086 (“The Government ... argues ... that the Guidelines are too much like guideposts and not enough like fences to give rise to an ex post facto violation.”). The Court emphatically rejected that argument, explaining that “[t]he post -Booker federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review.” Id. at 2083. This “anchoring” effect, the Court said, is enough to implicate the concerns underlying the Ex Post Facto Clause; the sentencing court’s discretion to sentence outside the Guidelines range “[does] not defeat an ex post facto claim.” Id. at 2081.
The Court explicitly listed the procedural rules and appellate-review standards that give the post -Booker Guidelines a degree of “binding legal effect” sufficient to raise ex post facto concerns. Id. at 2086. District judges must begin their sentencing analysis with the Guidelines and correctly calculate the applicable sentencing range. Id. at 2083 (citing Gall v. United States, 552 U.S. 38, 50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007)). Failure to correctly calculate the Guidelines range is procedural error. Id. (citing Gall, 552 U.S. at 51, 128 S.Ct. 586). Variances above or below the range must be specifically justified, and more justification is needed as the variance increases. Id. In short, even though “a district court may ultimately sentence a given defendant outside the ... range,” the Guidelines retain “force” as the “framework for sentencing.” Id. “Indeed, the rule that an incorrect Guidelines calculation is procedural error ensures that they remain the starting point for every sentencing calculation....” Id.
And perhaps most importantly, reviewing courts may presume that a within-Guidelines sentence is reasonable. Id. Our circuit has adopted such a presumption. See United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005) (“[A]ny sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness [on appeal].”).
With all these formal procedural requirements, the post-Booker Guidelines, though ultimately advisory, are not “merely a volume that the district court reads with academic interest in the course of sentencing.” Peugh, 133 S.Ct. at 2087. To the contrary, the Guidelines have real-world consequences despite their demotion to advisory status. Peugh pointed to “considerable empirical evidence” establishing that the Guidelines continue to have “the intended effect of influencing the sentences imposed by judges.” Id. at 2084. Data from the Sentencing Commission “indicate that when a Guidelines range moves up or down, offenders’ sentences move with it.” Id. As the Court put it very recently, “[t]hese sources confirm that the Guidelines are not only the starting point for most federal sentencing proceedings but also the lodestar.” Molina-Martinez v. United States, — U.S. -, 136 S.Ct. 1338, 1346, 194 L.Ed.2d 444 (2016).
This combination of formal legal requirements and real-world effects led the Court to conclude that the Guidelines, though advisory, are not immune from Ex *724 Post Facto Clause scrutiny. Peugh, 133 S.Ct. at 2084. The Court went on to hold that “[a] retrospective increase in the Guidelines range ... creates a sufficient risk of a higher sentence to constitute an ex post facto violation.” Id.
It should be clear from this discussion that TichenoPs second premise — that the Guidelines’ advisory status insulates them from vagueness challenges — -did not survive Peugh. The Court held, after all, that the Guidelines are sufficiently law-like to trigger Ex Post Facto protection. If the Guidelines are constraining enough to require compliance with the Ex Post Facto Clause, it follows that they are constraining enough to require compliance with the Due Process Clause’s prohibition against vague laws. We see no principled way to distinguish Peugh on doctrinal grounds: The two constitutional protections share the same underlying concerns about fair notice and arbitrary governmental action.
To the extent that Tichenor relied on Irizarry, Peugh explicitly considered and rejected the analogy. Irizarry held that district judges are not required to give notice before imposing an above-Guidelines sentence based on the sentencing factors in 18 U.S.C. § 3553(a). 553 U.S. at 713, 128 S.Ct. 2198. Peugh distinguished Irizarry this way:-
It is true that we held, in Irizarry v. United States, 553 U.S. 708, 713-714, 128 S.Ct. 2198, 171 L.Ed.2d 28 ..., that a defendant does not have an “expectation subject to due process protection” that he will be sentenced within the Guidelines range. But ... the Ex Post Facto Clause does not merely protect reliance interests. It also reflects principles of “fundamental justice.” Carmell, 529 U.S. at 531, 120 S.Ct. 1620.
Peugh, 133 S.Ct. at 2085. The Court’s-reference to “reliance interests” is shorthand for the fair-notice principle, and its reference to “fundamental justice” captures the Ex Post Facto Clause’s concern about arbitrary governmental action. Vagueness doctrine reflects the same concerns. Indeed, in Johnson the Court concluded that the ACCA’s residual clause both denies fair notice and invites arbitrary enforcement. But the fair-notice principle was mostly in the background; the Court’s chief concern was that the radical indeterminacy of the residual clause made judicial enforcement essentially ad hoc and arbitrary.
Irizarry is also distinguishable for another reason. It addressed a question about procedural notice: Must the sentencing court give the defendant notice and an opportunity to respond before imposing an above-Guidelines sentence under § 3553(a)? 553 U.S. at 712-13, 128 S.Ct. 2198. Vagueness doctrine and the Ex Post Facto Clause enforce a different notice principle: the substantive requirement that the law must give clear notice of the conduct that it prohibits and the consequences that attach to a violation. See United States v. Pawlak, 822 F.3d 902, 909 (6th Cir. 2016) (explaining the difference between “adversarial notice” and “ex ante notice”). For this additional reason, Irizar-ry doesn’t inform the analysis here.
Finally, our dissenting colleagues warn that if vagueness doctrine extends to the advisory Guidelines, then other broad and open-ended provisions are vulnerable — for example, the “sophisticated means” enhancement, § 2Bl.l(b)(10); the “vulnerable victim” enhancement, § 3Al.l(b); the “abuse of trust” enhancement, § 3B1.3; and even the foundational concept of “relevant conduct,” § 1B1.3, which applies to all crimes. See Dissent at pp. 728-30. Johnson itself specially addressed this kind of objection and rejected it. The Court explained at length that the vagueness defect in the ACCA’s residual clause is not just *725 its use of indeterminate language; it’s that the clause uses indeterminate language and must be applied categorically, without regard to real-world facts. Johnson, 185 S.Ct. at 2557-58. The Court could not have been clearer on this point: It’s the combination of indeterminate language and categorical application that makes the clause fatally vague. The same is true of the residual clause in the Guidelines. But the categorical feature is unique to the residual clause; other Guidelines provisions are applied to actual facts on the ground. That distinction makes a difference under Johnson.
Simply put, after Peugh we can no longer say, as we did in Tichenor, that because the Guidelines are “advice” rather than “rules,” they are immune from challenge on vagueness grounds. Because Tichenor has lost its analytical foundation, we now overrule it. Applying Johnson, we hold that the residual clause in § 4B1.2(a)(l) is unconstitutionally vague.
With this holding, we join a growing consensus among the circuits. See Pawlak, 822 F.3d at 907 (applying Johnson to the residual clause in § 4B1.2(a)(2) and finding it unconstitutionally vague); United States v. Madrid, 805 F.3d 1204, 1211 (10th Cir. 2015) (same); United States v. Taylor, 803 F.3d 931, 933 (8th Cir. 2015) (holding that Johnson applies to the career-offender guideline but remanding for determination of the vagueness question). Several other circuits have accepted the government’s concession without further discussion or assumed without deciding that Johnson applies to the career-offender guideline. See United States v. Soto-Rivera, 811 F.3d 53, 59 (1st Cir. 2016) (accepting the government’s concession that the § 4B1.2(a)(2) residual clause is unconstitutionally vague without deciding the issue); United States v. Maldonado, 636 Fed.Appx. 807, 810 & n.1 (2d. Cir. 2016) (assuming without deciding that “the due process concerns that led Johnson to invalidate the ACCA’s residual clause as void for vagueness are equally applicable to the Sentencing Guidelines”); United States v. Townsend, 638 Fed.Appx. 172, 178 & n.14 (3d. Cir. 2015) (invalidating the Guidelines’ residual clause after Johnson without extended discussion of whether the vagueness doctrine applies). One circuit has declined to apply Johnson to the Guidelines. See United States v. Matchett, 802 F.3d 1185, 1194-95 (11th Cir. 2015).[4]
C. Remedy
For both Hurlburt and Gillespie, the Johnson error produced a Guidelines range that was too high. That’s ordinarily enough to satisfy the prejudice requirement of plain-error review. To establish that the error affected their substantial rights, the defendants must show “a reasonable probability that, but for the error, the outcome of the proceeding would have been different.” Molina-Martinez, 136 S.Ct. at 1343, (internal quotation marks omitted). “When a defendant is sentenced under an incorrect Guidelines range[,] ... the error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error.” Id. at 1345 (emphasis added). This is because the Guidelines “inform and instruct the district court’s determination of an appropriate sentence. In the usual case, then, the systemic function of the selected Guide *726 lines range will affect the sentence.” Id. at 1346.
Hurlburt’s 72-month sentence fell below the original Guidelines range but is above the correctly calculated range once the Johnson error is removed. The same is true of Gillespie’s 84-month sentence. The defendants request full remand for resen-tencing.
The government argues for a limited remand akin to the procedure we adopted in United States v. Paladino, 401 F.3d 471 (7th Cir. 2005), for Booker errors. Paladino fashioned a “limited remand to permit the sentencing judge to determine whether he would (if required to resen-tence) reimpose his original sentence.” Id. at 484. But we’ve generally rejected the Paladino-style limited-remand procedure when the sentencing error involves a miscalculation of the defendant’s Guidelines range. See United States v. Williams, 742 F.3d 304 (7th Cir. 2014). “When a district court incorrectly calculates the [G]uide-line[s] range, we normally presume the improperly calculated [G]uideline[s] range influenced the judge’s choice of sentence, unless he says otherwise.” United States v. Adams, 746 F.3d 734, 743 (7th Cir. 2014). Neither judge said otherwise here.
Accordingly, we Vacate the defendants’ sentences and RemaNd for resentencing.

. Another appeal we decide today, United States v. Rollins, No. 13-1731, also raises the same issue and was argued the same day. Because Rollins presents an additional issue unique to that case, we have not consolidated it here.

. District Judge J. Phil Gilbert, of the Southern District of Illinois, served on the original panel, sitting by designation. We appreciate his willingness to assist the court.

. The Fifth Amendment provides: "No person shall ... be deprived of life, liberty, or property, without due process of law....” U.S. Const amend. V.

. As we’ve noted, the Supreme Court has granted certiorari in a case from the Eleventh Circuit. Beckles v. United States, 616 Fed.Appx. 415 (11th Cir. 2015), cert. granted,U.S. -, 136 S.Ct. 2510, 195 L.Ed.2d 838 (2016). The Bedeles panel followed Matchett, the Eleventh Circuit's precedent on this question.