Justice KENNEDY, concurring.
As sentencing laws and standards continue to evolve, cases may arise in which the formulation of a sentencing provision leads to a sentence, or a pattern of sentencing, challenged as so arbitrary that it implicates constitutional concerns. In that instance, a litigant might use the word vague in a general sense-that is to say, imprecise or unclear-in trying to establish that the sentencing decision was flawed. That something is vague as a general matter, however, does not necessarily mean that it is vague within the well-established legal meaning of that term. And it seems most unlikely that the definitional structure used to explain vagueness in the context of fair warning to a transgressor, or of preventing arbitrary enforcement, is, by automatic transference, applicable to the subject of sentencing where judicial discretion is involved as distinct from a statutory command. See Johnson v. United States, 576 U.S. ----, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).
The existing principles for defining vagueness cannot be transported uncritically to the realm of judicial discretion in sentencing. Some other explication of the constitutional limitations likely would be required.
These considerations inform my reading of the Court's opinion, in which I join.
Justice GINSBURG, concurring in the judgment.
This case has a simple solution. When Travis Beckles was convicted in 2007 of violating 18 U.S.C. § 922(g)(1), the official commentary to the career-offender Sentencing Guideline expressly designated his offense of conviction-possessing a sawed-off shotgun as a felon-a "crime of violence." See ante, at 890 - 891; United States Sentencing Commission, Guidelines Manual § 4B1.2(a), comment., n. 1 (Nov. 2006). Harmonious with federal law and the text of § 4B1.2(a), that commentary was "authoritative." Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).*
*898 Beckles therefore cannot, and indeed does not, claim that § 4B1.2(a) was vague as applied to him. And because his conduct was "clearly proscribed," he also "cannot complain of the vagueness of the [guideline] as applied to the conduct of others." Holder v. Humanitarian Law Project, 561 U.S. 1, 18-19, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010) (internal quotation marks omitted) (rejecting vagueness challenge to terrorism material-support statute, 18 U.S.C. § 2339B ). I would accordingly defer any more encompassing ruling until a case we have agreed to take up requires one.
Justice SOTOMAYOR, concurring in the judgment.
Justice GINSBURG explains why the Court's holding today is unnecessary. See ante, at 897 - 898 (opinion concurring in judgment). Petitioner Travis Beckles was sentenced to 30 years in prison on the basis of commentary promulgated by the U.S. Sentencing Commission interpreting a sentencing provision identical to the "residual clause" we held unconstitutionally vague two years ago in Johnson v. United States, 576 U.S. ----, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015). But Johnson affords Beckles no relief, because the commentary under which he was sentenced was not unconstitutionally vague. Had the majority limited itself to this conclusion, I would have joined its opinion. Instead, the majority reaches far beyond what is necessary to resolve this case and announces that the U.S. Sentencing Guidelines as a whole are immune from vagueness challenges.
I write separately to explain why that holding is not only unnecessary, but also deeply unsound. The Guidelines anchor every sentence imposed in federal district courts. They are, " 'in a real sense[,] the basis for the sentence.' " Molina-Martinez v. United States, 578 U.S. ----, ----, 136 S.Ct. 1338, 1345, 194 L.Ed.2d 444 (2016) (quoting Peugh v. United States, 569 U.S. ----, ----, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013) ; emphasis deleted). The Due Process Clause requires that rules this weighty be drafted "with sufficient definiteness that ordinary people can understand" them, and "in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). Because I cannot agree with the majority's conclusion to the contrary, I respectfully concur in the judgment only.
I
A
The Due Process Clause prohibits the Government from "taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson, 576 U.S., at ----, 135 S.Ct., at 2556. The prohibition against vagueness in criminal proceedings is "a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law." Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926).
*899 The doctrine rests on two justifications. First, it ensures that people receive "fair notice of what is prohibited." United States v. Williams, 553 U.S. 285, 304, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). Second, it safeguards the integrity of the judicial system by ensuring that criminal adjudications are not conducted in an arbitrary manner and that terms of imprisonment are not imposed "on an ad hoc and subjective basis." Grayned v. City of Rockford, 408 U.S. 104, 109, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).
"These principles apply not only to statutes defining elements of crimes, but also to statutes fixing sentences." Johnson, 576 U.S., at ----, 135 S.Ct., at 2557. Just two Terms ago, we struck down a sentencing law-the Armed Career Criminal Act's (ACCA) residual clause, 18 U.S.C. § 924(e)(2)(B) -as unconstitutionally vague. See 576 U.S., at ----, 135 S.Ct., at 2563. We spent little time on whether the vagueness doctrine applied to such provisions. Id., at ----, 135 S.Ct., at 2556-2557. And for good reason: A statute fixing a sentence imposes no less a deprivation of liberty than does a statute defining a crime, as our Sixth Amendment jurisprudence makes plain. See Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We instead analyzed the residual clause in light of "[n]ine years' experience trying to derive meaning from" it, 576 U.S., at ----, 135 S.Ct., at 2560, and declared the experiment a failure. "Invoking so shapeless a provision to condemn someone to prison for 15 years to life," we held, "does not comport with the Constitution's guarantee of due process." Ibid.
B
The question before us is how these principles apply to the U.S. Sentencing Guidelines.
Congress established the U.S. Sentencing Commission in 1984 in order to address "[f]undamental and widespread dissatisfaction" with the then-prevailing regime of discretionary sentencing. Mistretta v. United States, 488 U.S. 361, 365-366, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989) ; see Sentencing Reform Act of 1984, § 217(a), 98 Stat. 2017. It charged the Commission with reducing "the great variation among sentences imposed by different judges upon similarly situated offenders" and the resulting "uncertainty as to the time [each] offender would spend in prison." Mistretta, 488 U.S., at 366, 109 S.Ct. 647. The Sentencing Guidelines are the product of that mandate. The Guidelines establish a framework "under which a set of inputs specific to a given case (the particular characteristics of the offense and offender) yiel[d] a predetermined output (a range of months within which the defendant [can] be sentenced)." Peugh, 569 U.S., at ----, 133 S.Ct., at 2079. In doing so, the Guidelines ensure "uniformity in sentencing ... imposed by different federal courts for similar criminal conduct" and "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." Rita v. United States, 551 U.S. 338, 349, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007) (internal quotation marks omitted).
The Guidelines today play a central role in federal sentencing. Although no longer binding on federal courts, see United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Guidelines nonetheless "provide the framework for the tens of thousands of federal sentencing proceedings that occur each year," Molina-Martinez, 578 U.S., at ----, 136 S.Ct., at 1342. A district court must *900 "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." Gall v. United States, 552 U.S. 38, 49-50, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). The court must entertain the parties' arguments and consider the factors set forth in 18 U.S.C. § 3553(a) as possible grounds for deviation from the Guidelines range, 552 U.S., at 49-50, 128 S.Ct. 586, and "may not presume the ... range is reasonable," id., at 50, 128 S.Ct. 586. But it must explain any deviation from the range on the record, and it must "ensure that the justification is sufficiently compelling to support the degree of the variance." Ibid. ; see Peugh, 569 U.S., at ---- - ----, 133 S.Ct., at 2086-2087. A district court that incorrectly calculates the Guidelines range commits reversible procedural error, see Gall, 552 U.S., at 51, 128 S.Ct. 586 ; a district court that imposes a sentence within the correct Guidelines range, by contrast, may be afforded a presumption that the sentence it has imposed is reasonable, see Rita, 551 U.S., at 347, 127 S.Ct. 2456.
The importance of the Guidelines in this process, as we explained last Term, makes them "not only the starting point for most federal sentencing proceedings but also the lodestar." Molina-Martinez, 578 U.S., at ----, 136 S.Ct., at 1346. In most cases, it is the range set by the Guidelines, not the minimum or maximum term of imprisonment set by statute, that specifies the number of years a defendant will spend in prison. District courts impose a sentence within the Guidelines (or below the Guidelines based on a Government motion) over 80% of the time. Ibid. ; see 2015 Annual Report and 2015 Sourcebook of Federal Sentencing Statistics (20th ed.) (Figure G), online at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2015/FigureG.pdf (as last visited Feb. 27, 2017). And when Guidelines ranges change-because the Guidelines themselves change, or because the court is informed of an error it made in applying them-sentences change, too.[1] See Molina-Martinez, 578 U.S., at ----, 136 S.Ct., at 1346 ; Peugh, 569 U.S., at ----, 133 S.Ct., at 2084-2085. It is therefore no exaggeration to say that the Guidelines are, " 'in a real sense[,] the basis for the sentence' " imposed by the district court. Molina-Martinez, 578 U.S., at ----, 136 S.Ct., at 1345 (quoting Peugh, 569 U.S., at ----, 133 S.Ct., at 2083 ; emphasis deleted).
C
It follows from the central role that the Guidelines play at sentencing that they should be susceptible to vagueness challenges under the Due Process Clause.
Contrary to the majority's conclusion, an inscrutably vague Guideline implicates both of the concerns animating the prohibition on vagueness. First, a district court's reliance on such a Guideline deprives an ordinary person of "fair notice" of the consequences of his actions. See Johnson, 576 U.S., at ----, 135 S.Ct., at 2556. A defendant is entitled to understand the legal rules that will determine his sentence. But a vague Guideline is by definition impossible to understand. Take the career-offender Guideline at issue here. We explained in Johnson that the *901 identically worded provision in the ACCA created "pervasive disagreement" among courts imposing sentences as to "the nature of the inquiry" that they were required to conduct. Id., at ----, 135 S.Ct., at 2560. The result was a law that was " 'nearly impossible to apply consistently.' " Ibid. (quoting Chambers v. United States, 555 U.S. 122, 133, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009) (ALITO, J., concurring in judgment)). An ordinary person cannot be expected to understand the consequences that such a shapeless provision will have on his sentence.[2]
Second, and more importantly, a district court's reliance on a vague Guideline creates a serious risk of "arbitrary enforcement." See Johnson, 576 U.S., at ----, 135 S.Ct., at 2556. As set out above, although the Guidelines do not bind a district court as a formal matter, as a functional matter they "anchor both the district court's discretion and the appellate review process." Peugh, 569 U.S., at ----, 133 S.Ct., at 2087. It introduces an unacceptable degree of arbitrariness into sentencing proceedings to begin by applying a rule that is so vague that efforts to interpret it boil down to "guesswork and intuition." Johnson, 576 U.S., at ----, 135 S.Ct., at 2559. One judge may conduct a statistical analysis to decide that a defendant's crime of conviction is not a crime of violence. Another may rely on gut instinct to conclude that it is. Still a third may "throw [our] opinions into the air in frustration, and give free rein to [her] own feelings" in making the decision. Derby v. United States, 564 U.S. 1047, 1049, 131 S.Ct. 2858, 180 L.Ed.2d 904 (2011) (Scalia, J., dissenting from denial of certiorari). Importantly, that decision is the end of the ballgame for a criminal defendant. Although he may ask the judge to vary downward from the Guidelines range, he must take the range as the starting point for his request. He may ask for a month here or a month there, but he is negotiating from a baseline he cannot control or predict. The result is a sentencing proceeding hopelessly skewed from the outset by "unpredictability and arbitrariness." Johnson, 576 U.S., at ----, 135 S.Ct., at 2558. The Due Process Clause does not tolerate such a proceeding.
Consider, by way of example, a hypothetical version of Beckles' own sentencing proceeding in which the commentary played no clarifying role. Beckles was convicted of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and sentenced to 360 months in prison. That sentence sat at the bottom end of the applicable Guidelines range, factoring in the career-offender Guideline: 360 months to life. But had the career-offender Guideline not applied to Beckles, the Guidelines range calculated by the District Court would have been significantly lower: 262 to 327 months. See Beckles v. United States, Civ. No. 10-23517 (S.D.Fla., Mar. 4, 2013), App. 129-130. Absent that Guideline, Beckles would have been sentenced to between 33 and 98 fewer months in prison. The District Court admitted as much, explaining that had the Guideline not applied, she "would not have imprisoned Beckles to 360 months" in prison. Id., at 149 (emphasis deleted). Years of *902 Beckles' life thus turned solely on whether the career-offender Guideline applied. There is no meaningful way in which the Guideline exerted less effect on Beckles' sentence than did the statute setting his minimum and maximum terms of imprisonment; indeed, it was the Guidelines, not just the statute, that "fix[ed]" Beckles' "sentenc[e]" in every meaningful way. Johnson, 576 U.S., at ----, 135 S.Ct., at 2556-2557. Nothing of substance, in other words, distinguishes the Guidelines from the kind of laws we held susceptible to vagueness challenges in Johnson ; both law and Guideline alike operate to extend the time a person spends in prison. The Due Process Clause should apply equally to each.
II
The majority brushes past this logic in its decision to shield the Guidelines from vagueness challenges. In doing so, it casts our sentencing jurisprudence into doubt and upends the law of nearly every Court of Appeals to have considered this question.[3] None of its explanations justify its novel and sweeping conclusion.
A
The majority first reasons that the Guidelines are not susceptible to vagueness challenges because they "do not fix the permissible range of sentences," ante, at 892, but merely "guide district courts in exercising their discretion," ante, at 894. But we have not embraced such formalism before, and the majority provides no coherent justification for its decision to do so here.
Indeed, we have refused before to apply exactly the formalistic distinction that the majority now embraces. In Espinosa v. Florida, 505 U.S. 1079, 1081, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992) (per curiam ), we held that a state's capital aggravating factor that was drafted in a manner "so vague as to leave the sentencer without sufficient guidance for determining the presence or absence of the factor" violated the Eighth Amendment. The factor was unconstitutional, we explained, notwithstanding the fact that only the jury, not the judge, was instructed on the factor; that the judge, not the jury, made the final decision to sentence the defendant to death; and that the judge, in doing so, was not required to defer to the jury's recommendation. "This kind of indirect weighing of an invalid aggravating factor," we explained, "creates the same potential for arbitrariness as the direct weighing of an invalid aggravating factor." Id., at 1082, 112 S.Ct. 2926. In doing so, we effectively rejected just the argument the majority now embraces: that advisory guidelines lack the kind of binding legal effect that subject them to constitutional scrutiny.
If there were any doubt that advisory sentencing guidelines are subject to constitutional limits, we dispelled it in Peugh, where we held that the Guidelines are amenable to challenges under the Ex Post Facto Clause. See 569 U.S., at ----, 133 S.Ct., at 2077-2078. There, the Government argued that the "advisory" nature of the Guidelines rendered them immune from such claims. Id., at ----, 133 S.Ct., at 2081-2082. But we rejected such an argument. "The federal system," we explained, "adopts procedural measures intended *903 to make the Guidelines the lodestone of sentencing," and "considerable empirical evidence indicate[s] that the ... Guidelines have the intended effect." Id., at ---- - ----, 133 S.Ct., at 2084. We declined the Government's invitation to limit our ex post facto jurisprudence to rules that, as a formal matter, "increase[d] the maximum sentence for which a defendant is eligible." Id., at ----, 133 S.Ct., at 2081. And we explained that a rule may exert " 'binding legal effect' through ... procedural rules and standards for appellate review that, in combination, encourag[e] district courts to sentence within the guidelines." Id., at ----, 133 S.Ct., at 2086. It was not true, we concluded, that "the Guidelines are too much like guideposts and not enough like fences," ibid. ; instead, the Guidelines were just fencelike enough-just lawlike enough-that they cannot be shielded from the Constitution's reach.
The same principle should dictate the same result in this case. How can the Guidelines carry sufficient legal weight to warrant scrutiny under the Eighth Amendment and the Ex Post Facto Clause, but not enough to warrant scrutiny under the Due Process Clause? Cf. United States v. Hurlburt, 835 F.3d 715, 724 (C.A.7 2016) (en banc) ("We see no principled way to distinguish Peugh on doctrinal grounds"). The majority offers no convincing answer. It asserts that the Due Process Clause "requires a different inquiry" than these provisions do. Ante, at 895. But it does not explain why it views this as relevant to the constitutional status of the Guidelines. A court considering a challenge to a criminal statute under the Ex Post Facto Clause will apply a different legal standard than will a court considering a vagueness challenge to the same statute; that does not make the statute more or less susceptible to constitutional challenge in one context than the other. Our opinion in Peugh is particularly difficult for the majority to escape, given that the Ex Post Facto Clause, like the Due Process Clause's prohibition against vagueness, is rooted in concerns about "fair warning" and " 'fundamental fairness.' " 569 U.S., at ----, 133 S.Ct., at 2085 (plurality opinion). The majority musters no persuasive explanation for why those concerns would have less force in this context than in that one. That is because none exists.[4]
B
The majority next posits that because courts have long sentenced defendants under purely discretionary regimes, there can be no vagueness concern with any system that, like the Guidelines regime, sets guideposts on the exercise of discretion. Ante, at 892 - 894. But this argument fundamentally misunderstands the problem caused by a court's reliance on a vague sentencing guideline.
True enough, for many years, federal courts relied on "a system of indeterminate sentencing" in criminal cases. Mistretta, 488 U.S., at 363, 109 S.Ct. 647 ; see also K. Stith & J. Cabranes, Fear of Judging: Sentencing Guidelines in the Federal Courts 9-14 (1998). Under such a scheme, a sentencing judge considers the full range *904 of relevant aggravating and mitigating facts and circumstances, as well as his view of proper sentencing policy, and then imposes a sentence in light of those considerations. See Koon v. United States, 518 U.S. 81, 113, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue"). As the majority notes, no party here "suggests that a system of purely discretionary sentencing could be subject to a vagueness challenge." Ante, at 893. The majority reasons that the Guidelines-which limit the sentencing judge's discretion from what he otherwise would have enjoyed-must therefore also be immune from vagueness attacks. Ibid.
But the majority misapprehends the nature of the constitutional infirmity that occurs when a sentencing judge relies on an inscrutably vague guideline. A defendant who is sentenced under a purely discretionary regime does not face the prospect of "arbitrary enforcement" by the sentencing judge, Kolender, 461 U.S., at 358, 103 S.Ct. 1855 ; rather, he faces a fact- and context-sensitive determination informed by the exercise of reasoned judgment. A defendant sentenced pursuant to an impossibly vague Guideline, by contrast, is put in an untenable position. The "lodestone" of his sentence-the baseline against which the district court will assess his characteristics and his conduct-is set by a rule that is impossible to understand. Such a proceeding is the antithesis of due process. See Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966) ("Implicit in [due process] is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce"). It is not reliance on discretion that makes a sentencing regime vague; it is reliance on an impenetrable rule as a baseline for the exercise of that discretion. Reliance on a rule of this kind, whether set out in a statute or in a Guideline, does not comport with " 'ordinary notions of fair play.' " Johnson, 576 U.S., at ----, 135 S.Ct., at 2557.
C
The majority ends by speculating that permitting vagueness attacks on the Guidelines would call into question the validity of many Guidelines, and even the factors that Congress has instructed courts to consider in imposing sentences. See ante, at 895 - 896. In doing so, the majority once more resuscitates arguments we have already considered and dismissed.
Johnson confronted and rejected a version of this argument. There, the Government contended that "dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' " terms that-in its view-were indistinguishable from the residual clause at issue in that case. 576 U.S., at ----, 135 S.Ct., at 2561. We rejected the argument, explaining that such rules "call[ed] for the application of a qualitative standard such as 'substantial risk' to real-world conduct; 'the law is full of instances where a man's fate depends on his estimating rightly ... some matter of degree.' " Ibid. (quoting Nash v. United States, 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232 (1913) ). What rendered the ACCA's residual clause unconstitutionally vague, we explained, was not that it required "gauging the riskiness of conduct in which an individual defendant engages on a particular occasion, " but that it required the application of an ambiguous standard "to an idealized ordinary case of the crime." 576 U.S., at ----, 135 S.Ct., at 2561. Holding the residual clause unconstitutionally vague, in other words, cast no doubt on the dozens *905 of laws elsewhere in the U.S. Code requiring the application of general standards to particular conduct.
The same is true here. The sentencing factors described by the majority bear no similarity to the categorical risk analysis that the Court held unconstitutionally vague in Johnson , nor to any other statutes it has previously found vague. Congress' instruction to district courts to consider, for instance, "the nature and circumstances of the offense and the history and characteristics of the defendant," § 3553(a)(1), bears little resemblance to statutes requiring subjective determinations as to whether conduct is "annoying" or "unjust." See Coates v. Cincinnati, 402 U.S. 611, 615-616, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) ; United States v. L. Cohen Grocery Co., 255 U.S. 81, 89, 41 S.Ct. 298, 65 L.Ed. 516 (1921).[5] And to the extent that the majority's concern is that subjecting sentencing factors to the Due Process Clause's prohibition on vagueness would risk the demise of discretionary sentencing regimes, that prospect is unlikely, for the reasons I have already explained.
* * *
It violates the Due Process Clause "to condemn someone to prison" on the basis of a sentencing rule "so shapeless" as to resist interpretation. 576 U.S., at ----, 135 S.Ct., at 2560. But the Court's decision today permits exactly that result. With respect, I concur only in the judgment.

The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See United States v. Detroit Timber & Lumber Co., 200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed. 499.

Beckles protests that the commentary is "inconsistent with" § 4B1.2(a), and thus inoperative, once the residual clause is stricken from the Guideline as impermissibly vague. Brief for Petitioner 49; see Stinson, 508 U.S., at 38, 113 S.Ct. 1913. But excising the problematic provision first and considering illustrative language second "flip[s] the normal order of operations in adjudicating vagueness challenges." Brief for United States 55. This Court has routinely rejected, in a variety of contexts, vagueness claims where a clarifying construction rendered an otherwise enigmatic provision clear as applied to the challenger. See Bell v. Cone, 543 U.S. 447, 453, 457-458, 125 S.Ct. 847, 160 L.Ed.2d 881 (2005) (per curiam ) (capital aggravating factor clarified by state-court precedent); Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 500-502, and n. 18, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (quasi-criminal ordinance clarified by licensing guidelines); Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 395, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969) (federal regulation clarified by agency adjudications).

The evidence before us suggests that the same is true of the career-offender Guideline at issue here. Given the near consensus among the lower courts that this Guideline is unconstitutionally vague, see n. 3, infra, some courts have proceeded to resentence defendants whose sentences were originally enhanced under the Guideline. See App. to Reply Brief 1-14. In these resentencings, "every defendant but one received a sentence lower than the sentence originally imposed," and the average defendant received a sentence "more than [three] years lower than the original sentence." Reply Brief 12.

Our decision in Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), is not to the contrary. In Irizarry we held that Federal Rule of Criminal Procedure 32(h) does not require a judge to inform a defendant, in advance of a sentencing proceeding, of his intent to vary above the Guidelines range. Id., at 715-716, 128 S.Ct. 2198. That narrow decision has no bearing on the broader question whether ordinary people are entitled to fair notice, under the Due Process Clause, of the rules that will dictate their punishment.

See United States v. Hurlburt, 835 F.3d 715, 721-725 (C.A.7 2016) (en banc) (the Guidelines are subject to vagueness challenges); United States v. Calabretta, 831 F.3d 128, 136-137 (C.A.3 2016) (same); United States v. Sheffield, 832 F.3d 296, 312-313 (C.A.D.C.2016) (same); United States v. Pawlak, 822 F.3d 902, 905-911 (C.A.6 2016) (same); United States v. Madrid, 805 F.3d 1204, 1210-1211 (C.A.10 2015) (same). But see United States v. Matchett, 802 F.3d 1185, 1193-1196 (C.A.11 2015) (they are not).

The Court's adherence to the formalistic distinction between mandatory and advisory rules at least leaves open the question whether defendants sentenced to terms of imprisonment before our decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) -that is, during the period in which the Guidelines did "fix the permissible range of sentences," ante, at 892-may mount vagueness attacks on their sentences. See Brief for Scholars of Criminal Law, Federal Courts, and Sentencing as Amici Curiae 33-34. That question is not presented by this case and I, like the majority, take no position on its appropriate resolution.

Indeed, the Ninth Circuit has held for decades that the Guidelines are subject to vagueness challenges, see United States v. Helmy, 951 F.2d 988, 993 (C.A.9 1991), yet the Government represents that that court has never found a Guideline unconstitutionally vague. See Reply Brief for United States 20.