In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1731

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRYL ROLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 10-CR-186 — **Rudolph T. Randa**, *Judge*.

ARGUED DECEMBER 2, 2015 — DECIDED AUGUST 29, 2016

Before WOOD, *Chief Judge*, and POSNER, FLAUM, EASTERBROOK, KANNE, ROVNER, WILLIAMS, SYKES, and HAMILTON, *Circuit Judges*.

SYKES, *Circuit Judge*. Darryl Rollins pleaded guilty to selling crack cocaine and was sentenced to 84 months in prison. This is our second time hearing his appeal. He challenges the calculation of his Sentencing Guidelines range—specifically, the district court's application of the career-offender guideline, which assigns a higher offense level if the defendant

has two prior convictions for a "crime of violence." *See* U.S.S.G. § 4B1.1(a). The term "crime of violence" includes "any offense … that … is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." *Id.* § 4B1.2(a)(2) (2014) (emphasis added). The highlighted text is known as the residual clause.

The district judge classified Rollins as a career offender based in part on a prior conviction for possession of a sawed-off shotgun, a crime that qualifies (if at all) only under the residual clause of this definition. In *United States v. Miller*, we held that possession of a short-barreled shotgun is not a predicate "violent felony" under the identically phrased residual clause in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). 721 F.3d 435, 437 (7th Cir. 2013). In the first go-round on this appeal, Rollins argued that because the two residual clauses are the same, *Miller* controls, notwithstanding application note 1 to § 4B1.2, which specifically lists possession of a sawed-off shotgun as a predicate crime of violence. A panel of the court rejected this argument based on *United States v. Raupp*, which holds that that the application note's list of qualifying crimes is a valid interpretation of the guideline's residual clause. 677 F.3d 756, 758–60 (7th Cir. 2012).

In the meantime, the government changed its position on two key questions lurking in the background: (1) Does the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015), apply to the residual clause in the career-offender guideline; and (2) should *United States v. Tichenor*, 683 F.3d 358 (7th Cir. 2012), be overruled? *Johnson* invalidated the ACCA's residual clause as unconstitutionally

vague. 135 S. Ct. at 2563. Although *Johnson* logically applies to the mirror-image residual clause in § 4B1.2(a)(2), our decision in *Tichenor* categorically forecloses vagueness challenges to the Guidelines. 683 F.3d at 364–65. The government previously invoked *Tichenor*, and Rollins did not ask the court to revisit and overrule it.

After the panel issued its opinion, however, the government reversed course and now argues that *Tichenor* should be overruled and that *Johnson*'s constitutional holding applies to the residual clause in § 4B1.2(a)(2). In light of the government's concession, the panel vacated its opinion and granted rehearing.

In a separate decision also issued today, the en banc court overrules *Tichenor* and holds that under *Johnson*, the residual clause in the career-offender guideline is unconstitutionally vague. *United States v. Hurlburt*, Nos. 14-3611 & 15-1686 (7th Cir. Aug. 29, 2016). That decision undermines *Raupp*'s rationale and is decisive here. Application note 1 has no legal force independent of the guideline itself; the note's list of qualifying crimes is valid (or not) *only* as an interpretation of § 4B1.2. *See Stinson v. United States*, 508 U.S. 36, 41–42 (1993). More to the point, when the Sentencing Commission says in application note 1 that possession of a sawed-off shotgun is a crime of violence, it is interpreting the residual clause in § 4B1.2(a)(2); no other part of the crime-of-violence definition applies. That was the basic premise of *Raupp*, which addressed the inchoate crime of conspiracy, another offense on the application note's list. 677 F.3d at 757–60.

But the residual clause in § 4B1.2(a)(2) is invalid, so *Raupp*'s premise no longer holds. The panel circulated a new opinion to the full court proposing to overrule *Raupp*. *See*

7TH CIR. R. 40(e). An en banc vote followed, and the court approved, making this the opinion of the full court. *See Buchmeier v. United States*, 581 F.3d 561 (7th Cir. 2009) (using the same procedure). Accordingly, we now vacate Rollins's sentence and remand for resentencing.

## I. Background

Rollins sold crack cocaine to confidential informants on four separate occasions in 2009 and 2010, and these sales led to his eventual indictment on four counts of drug distribution. *See* 21 U.S.C. § 841(a)(1). The government initially sought a statutory sentencing enhancement, *see id*. § 851, based on Rollins's 2005 Wisconsin felony drug conviction. Pursuant to plea negotiations, Rollins pleaded guilty to two counts and agreed for purposes of sentencing that he was responsible for the drug quantities involved in the other two sales. In exchange the government dropped the two remaining counts and withdrew its request for the § 851 enhancement.

Rollins's presentence report initially calculated a Guidelines sentencing range of 188–235 months based on an adjusted offense level of 31 and criminal history category VI. To reach this offense level, the probation officer classified Rollins as a career offender, which gave him a base offense level of 34, *see* U.S.S.G. § 4B1.1(b)(2), then deducted three points for acceptance of responsibility, *see id*. § 3E1.1. The career-offender guideline assigns higher base offense levels if the defendant has "at least two prior felony convictions of either a crime of violence or a controlled substance offense." § 4B1.1(a). A "crime of violence" is defined as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

§ 4B1.2(a) (emphasis added). Subsection (1) is sometimes called the "elements" clause; the highlighted text in subsection (2) is the residual clause.

Rollins's 2005 drug conviction supplied the first predicate for the career-offender designation. Rollins also has a prior conviction for possession of a sawed-off shotgun, *see* WIS. STAT. § 941.28, and application note 1 to § 4B1.2 lists this offense as a qualifying crime of violence: "For purposes of this guideline[,] … [u]nlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (e.g., a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun) is a 'crime of violence.'" The judge accordingly accepted the probation officer's recommendation and classified Rollins as a career offender.

Rollins initially faced a mandatory five years in prison and a maximum term of 40 years, but the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, reduced the

statutory range to no minimum and a 20-year maximum.[1] The Act also reduced the statutory minimum term of super- vised release from four years to three; the government alerted the judge to this change.

By reducing the maximum prison term, the Fair Sentenc- ing Act also affected the sentencing range under the Guide- lines. Rollins's adjusted offense level dropped from 31 to 29, which reduced the Guidelines range to 151–188 months. The parties agreed that this was the correct range. Without the career-offender designation, the Guidelines range drops to 130–162 months.

Regarding the recommended term of supervised release, although the government had alerted the court to the Act's reduction in the *statutory* minimum, no one told the judge that the recommended term of supervised release under the Guidelines was now three years rather than four to five years.

At sentencing the government recommended a below- Guidelines sentence of 87 months based on Rollins's sub- stantial assistance, *see* U.S.S.G. § 5K1.1, and in recognition of the 18 months he had spent in state custody. Rollins argued for a 57-month sentence. The judge imposed a sentence of 84 months in prison and four years of supervised release.

Rollins appealed, arguing that the judge improperly ap- plied the career-offender guideline and misapprehended the effect of the Fair Sentencing Act on the recommended term of supervised release under the Guidelines. His first argu-

---

[1] Under *Dorsey v. United States*, 132 S. Ct. 2321 (2012), the Fair Sentencing Act applies retroactively to Rollins.

ment hinged on our decision in *Miller*, which held that possession of a sawed-off shotgun is not a predicate violent felony under the ACCA's residual clause. 721 F.3d at 437. Because the residual clause in § 4B1.2(a)(2) mirrors the residual clause in the ACCA, Rollins urged us to apply *Miller* to the career-offender guideline, notwithstanding application note 1. That is, he asked us to disregard the application note because it contradicted the text of the residual clause in § 4B1.2(a)(2).

After the panel heard argument, the Supreme Court issued its decision in *Johnson* invalidating the ACCA's residual clause on vagueness grounds. 135 S. Ct. at 2563. The panel ordered supplemental briefing to address the effect of *Johnson* on this case. The government argued that *Tichenor* blocked application of *Johnson* to the career-offender guideline. *See Tichenor*, 683 F.3d at 364 (holding that the Guidelines are not susceptible to vagueness challenges). Rollins did not ask the court to revisit *Tichenor*, so we set aside the question of *Johnson*'s effect on § 4B1.2(a)(2).

With *Johnson* out of the picture, the outcome of the appeal turned on *Raupp*. There we held that the Sentencing Commission is "free to go its own way" when classifying offenses as crimes of violence under the career-offender guideline's residual clause, and this was so even if the same crime doesn't qualify as a predicate under the parallel residual clause in the ACCA. *Raupp*, 677 F.3d at 760–61. Applying *Raupp*, the panel rejected Rollins's argument under *Miller*. However, because the parties agreed that the judge misunderstood the recommended term of supervised release, the panel remanded to permit the judge to reconsider that part of the sentence.

Rollins quickly petitioned for rehearing, noting that in the meantime the government had changed its position on both *Tichenor* and *Johnson*'s effect on the career-offender guideline. The Assistant U.S. Attorney acknowledged the government's about-face and agreed that he should have notified us of this development sooner. The parties now agree that *Tichenor* should be overruled and that *Johnson*'s holding applies to the residual clause in § 4B1.2(a)(2). Accordingly, the panel vacated its decision and granted rehearing to address these questions and whether *Raupp* remains viable. As we've noted, an en banc vote followed, and this opinion has been adopted by the en banc court.[2]

## II. Discussion

In a separate opinion issued today, the en banc court overrules *Tichenor* and applies *Johnson*'s constitutional holding to the residual clause in § 4B1.2(a)(2). *United States v. Hurlburt*, Nos. 14-3611 & 15-1686 (7th Cir. Aug. 29, 2016). That decision settles the lion's share of this appeal. The residual clause is unconstitutionally vague, and Rollins's conviction for possession of a sawed-off shotgun is not a crime of violence under any other part of the definition in § 4B1.2(a). That is, it doesn't qualify under the "elements" clause in subsection (1), and it's not one of the specific crimes listed in subsection (2). The only question is whether this conviction counts as a predicate crime of violence based on the application note *alone*. On a proper understanding of

---

[2] District Judge J. Phil Gilbert, of the Southern District of Illinois, served on the original panel, sitting by designation. We appreciate his willingness to assist the court.

the role that application notes play, this question virtually answers itself.

We begin with the Supreme Court's decision in *Stinson,* which explained the "three varieties" of text in the Guidelines Sentencing Manual. 508 U.S. at 41. The first variety "is a guideline provision itself." *Id*. These "are the equivalent of legislative rules adopted by federal agencies." *Id*. at 45. The Guidelines (and any amendments) must be submitted to Congress "for a 6-month period of review, during which Congress can modify or disapprove them." *Id*. at 41.

The second variety of text in the Sentencing Manual consists of the Sentencing Commission's policy statements, which have much the same effect as the Guidelines themselves. *See id.* at 41–42 (citing 28 U.S.C. § 994(a)(2)). The third variety is the Commission's commentary; these "application notes" interpret the Guidelines and explain how they are to be applied. *Id*. at 42. The application notes thus are the agency's interpretation of its own legislative rules and under *Stinson* get *Auer* deference. *Id.* at 44; *Raupp*, 677 F.3d at 758 (citing *Auer v. Robbins*, 519 U.S. 452, 461–63 (1997)). Under this form of deference, an application note has "controlling weight unless it is plainly erroneous or inconsistent with" the text of the guideline it interprets. *Stinson*, 508 U.S. at 45 (quotation marks omitted).

In short, the application notes are *interpretations of*, not *additions to*, the Guidelines themselves; an application note has no *independent* force. Accordingly, the list of qualifying crimes in application note 1 to § 4B1.2 is enforceable only as an interpretation of the definition of the term "crime of violence" in the guideline itself. More specifically, the Sentencing Commission has interpreted the *residual clause* in

§ 4B1.2(a)(2) to include the specific crimes listed in application note 1. That interpretation is entitled to *Auer* deference, as we recognized in *Raupp*. But the note has no legal force standing alone. It follows, then, that because the residual clause in § 4B1.2(a)(2) is unconstitutional, the application note's list of qualifying crimes is inoperable and cannot be the basis for applying the career-offender enhancement.

The government suggests that we can read the list as a freestanding interpretation of the term "crime of violence." That argument cannot be squared with *Stinson*. "Crime of violence" is a defined term in the career-offender guideline. Under § 4B1.2(a), "crime of violence" means subpart 1 (the elements clause) and subpart 2 (the four specific crimes followed by the residual clause). If the application note's list is not interpreting one of those two subparts—and it isn't once the residual clause drops out—then it is in effect *adding to* the definition. And that's *necessarily* inconsistent with the text of the guideline itself.

Indeed, the First Circuit has recently rejected the government's argument that the note independently supports application of the career-offender enhancement. *See United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) ("There is simply no mechanism or textual hook in the [g]uideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of 'crime of violence.' With no such path available … , doing so would be inconsistent with the text of the [g]uideline."). We think that court has it exactly right.

Because the residual clause in § 4B1.2(a)(2) is unconstitutionally vague, our holding in *Raupp* has lost its tether to the text of the career-offender guideline. In *Raupp* we upheld the

defendant's career-offender designation based on a prior conviction for a different crime on the application note's list: the inchoate crime of conspiracy. 677 F.3d at 757–60. We held that the note's list of qualifying crimes was a valid interpretation of § 4B1.2(a)(2)'s residual clause, which was otherwise silent on the subject. *Id.* at 759 ("There cannot be a conflict [between the note and the guideline] because the text of § 4B1.2(a) does not tell us, one way or another, whether inchoate offenses are included or excluded. The note says they are included.").

But *Raupp* was decided before *Johnson*, and the prevailing understanding at the time was that the residual clauses in both the statute and the guideline had *some* kernel of meaning despite the judiciary's persistent struggle to settle on a coherent and consistent construction. That permitted us to defer to the Sentencing Commission's interpretation of the guideline's residual clause in application note 1. The prevailing understanding has now changed. Because *Raupp*'s premise has been undone by intervening legal developments, it is overruled.

To sum up, application note 1 is enforceable only as an interpretation of the residual clause in § 4B1.2(a)(2); it has no independent legal force. The residual clause is invalid, and the application note's list of qualifying crimes cannot alone supply the basis for a career-offender designation. Rollins's conviction for possession of a sawed-off shotgun doesn't qualify as a crime of violence under any other part of the definition. He was wrongly classified as a career offender.

Our final question is one of remedy. The career-offender error produced a Guidelines range that was too high. The

case is before us on plain-error review; we may correct a forfeited error if it is (1) "plain"; (2) affects the defendant's "substantial rights"; and (3) "seriously affects the fairness, integrity, or public reputation of [the] judicial proceedings." *Henderson v. United States*, 133 S. Ct. 1121, 1126–27 (2013) (quotation marks omitted). Rollins was sentenced before *Johnson* upended the controlling law, but it's enough that the error is "plain" at the time of appellate review. *Id*. at 1130.

That leaves the question of prejudice. To establish that the error affected his substantial rights, Rollins must show "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotation marks omitted). As in *Hurlburt*, the question of prejudice in this case is informed by the Supreme Court's recent decision in *Molina-Martinez*. There the Court explained that "[w]hen a defendant is sentenced under an incorrect Guidelines range[,] … the error itself can, *and most often will*, be sufficient to show a reasonable probability of a different outcome absent the error." *Id*. at 1345 (emphasis added). Rollins's 84-month sentence is well below the original Guidelines range because he received credit for his substantial assistance to the government, and it remains below the correctly calculated range once the career-offender error is removed. Still, "[w]hen a district court incorrectly calculates the [G]uideline[s] range, we normally presume the improperly calculated [G]uideline[s] range influenced the judge's choice of sentence, unless he says otherwise." *United States v. Adams*, 746 F.3d 734, 743 (7th Cir. 2014). Nothing in the record suggests that the normal presumption should not apply here.

Before concluding, we note that the Sentencing Commission has amended the Guidelines to delete § 4B1.2(a)(2)'s residual clause in light of *Johnson*. 81 Fed. Reg. 4741, 4742 (2016). The amendment, which became effective on August 1, 2016, also moves specific crimes from the application note's list to the text of the guideline itself. The amended guideline now reads, in relevant part: "The term 'crime of violence' means … murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, *or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a)* or explosive material as defined in 18 U.S.C. § 841(c)." 81 Fed. Reg. 4741, 4742 (2016 (emphasis added). (Recall that § 5845(a) covers possession of a sawed-off shotgun.) The amendment doesn't resolve this case, but it substantially clarifies future applications of the career-offender guideline.

For the foregoing reasons, we VACATE Rollins's sentence and REMAND for resentencing.[3]

---

[3] On remand the district court will have the opportunity to correct the error regarding the recommended term of supervised release.