In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1358

TODD A. D'ANTONI,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 16-cv-00398 — **William M. Conley**, *Judge.*

ARGUED FEBRUARY 8, 2019 — DECIDED FEBRUARY 21, 2019

Before FLAUM, BARRETT, and SCUDDER, *Circuit Judges.*

FLAUM, *Circuit Judge.* Todd D'Antoni received an enhanced sentence under the career-offender provision of the 1990 United States Sentencing Guidelines, based on a prior felony drug conviction and a prior felony "crime of violence" conviction. *See* U.S.S.G. § 4B1.1 (1990). Relevant here, the provision's "crime of violence" definition included a residual clause, encompassing any felony "involv[ing] conduct that

present[ed] a serious potential risk of physical injury to another." *Id.* § 4B1.2(1)(ii). The Guidelines were mandatory as applied to D'Antoni because he was sentenced well before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), which held the Guidelines must be advisory to comply with the Constitution.

Following *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Supreme Court held the identical Armed Career Criminal Act ("ACCA") residual clause "violent felony" definition was unconstitutionally vague, D'Antoni brought a 28 U.S.C. § 2255 motion seeking resentencing. He argued *Johnson* applied to make § 4B1.2's residual clause "crime of violence" definition unconstitutionally vague, and he claimed the sentencing court considered one of his predicate convictions—conspiracy to kill a government witness—a crime of violence only under the residual clause. Although in *Beckles v. United States*, 137 S. Ct. 886 (2017), the Supreme Court held that *Johnson* did not extend to the post-*Booker advisory* Guidelines residual clause, in *Cross v. United States*, 892 F.3d 288 (7th Cir. 2018), we held that *Johnson* did render the pre-*Booker mandatory* Guidelines residual clause unconstitutionally vague.

At issue in this case is whether D'Antoni's sentence should nevertheless be affirmed because "conspiracy," "murder," and "manslaughter" were listed as crimes of violence in the application notes to the 1990 version of § 4B1.2. Our unanimous en banc decision in *United States v. Rollins*, 836 F.3d 737 (7th Cir. 2016), answers this question: The application notes' list of qualifying crimes is valid only as an interpretation of § 4B1.2's residual clause, and because *Cross* invalidated that residual clause, the application notes no longer have legal force. Accordingly, D'Antoni is entitled to resentencing.

## I. Background

### A. Convictions and Sentences

In 1987, the government charged D'Antoni with selling cocaine to a juvenile resulting in her death, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 845(a). While in jail pending charges, D'Antoni offered another inmate $4,000 and two ounces of cocaine to kill a government witness related to the cocaine charge. The inmate agreed, and D'Antoni gave him instructions to contact D'Antoni's brother and a codefendant. However, instead of following D'Antoni's instructions, the inmate went to the police and agreed to cooperate. The government then charged D'Antoni with conspiracy to kill a government witness, in violation of 18 U.S.C. § 371.

D'Antoni simultaneously pleaded guilty to both the cocaine distribution charge and the conspiracy charge, and in December 1987, he was sentenced in both cases. The district court imposed a 35-year term of imprisonment on the drug charge and a consecutive 5-year term of imprisonment on the conspiracy charge. We affirmed those convictions and sentences. *United States v. D'Antoni*, 856 F.2d 975 (7th Cir. 1988).

In October 1990, the government charged D'Antoni with conspiracy to distribute LSD while in jail, in violation of 21 U.S.C. § 846. A jury convicted D'Antoni in February 1991. Pursuant to the drug-quantity Guideline, U.S.S.G. § 2D1.1 (1990), the presentence report calculated a mandatory Guidelines range of 51–63 months' imprisonment.

The government objected. It argued D'Antoni should receive an enhanced sentence under the Guidelines career-offender provision. The Guidelines classified a defendant as a career offender if: (1) he is at least eighteen years old when he

committed the instant offense; (2) the "instant offense of con-
viction is a felony that is either a crime of violence or a con-
trolled substance offense"; and (3) he "has at least two prior
felony convictions of either a crime of violence or a controlled
substance offense." *Id.* § 4B1.1. The 1990 Guidelines defined
"crime of violence" as follows:

> (1) The term "crime of violence" means any of-
>     fense under federal or state law punishable
>     by imprisonment for a term exceeding one
>     year that—
>
>> (i)  has as an element the use, attempted use,
>>      or threatened use of physical force
>>      against the person of another, or
>>
>> (ii) is burglary of a dwelling, arson, or extor-
>>      tion, involves use of explosives, *or other-*
>>      *wise involves conduct that presents a serious*
>>      *potential risk of physical injury to another*.

*Id.* § 4B1.2(1) (emphasis added). Section 4B1.2(1)(i) is referred
to as the "elements clause," the nonemphasized text in
§ 4B1.2(1)(ii) is referred to as the "enumerated offenses
clause," and the emphasized text in § 4B1.2(1)(ii) is referred to
as the "residual clause." Also relevant are application notes 1
and 2 to the 1990 version of § 4B1.2, which state:

> 1. The terms "crime of violence" and "controlled
>    substance offense" include the offenses of aid-
>    ing and abetting, conspiring, and attempting
>    to commit such offenses.
>
> 2. "Crime of violence" includes murder, man-
>    slaughter, [and other offenses].

*Id.* § 4B1.2 cmt. nn.1, 2.[1] The government argued D'Antoni was a career offender because his cocaine conviction was a controlled substance offense and his conspiracy to kill a government witness conviction was a crime of violence.

The district court agreed. Pursuant to § 4B1.1, it calculated D'Antoni's mandatory Guidelines range as 262–327 months' imprisonment. The court imposed a 264-month sentence, to be served consecutively with the prior 40-year sentence. In deciding that the conspiracy to kill a government witness conviction was a "crime of violence," the court did not explain its reasoning; it did not specify whether it relied on § 4B1.2's residual clause, elements clause, commentary, or some combination of those parts of the provision. D'Antoni appealed, contending the court erred in classifying him as a career offender because his two prior convictions were "related" and should not have been counted separately. We disagreed and affirmed the sentence. *United States v. D'Antoni*, 980 F.2d 733, 1992 WL 357229 (7th Cir. Dec. 3, 1992) (unpublished).

## B. First 28 U.S.C. § 2255 Motion

On October 26, 2010, D'Antoni filed a § 2255 motion to vacate his sentence, arguing his career-offender sentence was determined without prior notice of the underlying convictions, in violation of 21 U.S.C. § 851. The district court denied

---

[1] Section 4B1.2 has been subsequently amended. Until 2016, there were no substantive changes, but the provision was renumbered (e.g., § 4B1.2(1)(ii) was relabeled § 4B1.2(a)(2)) and the contents of 1990 application notes 1 and 2 were combined into application note 1. In 2016, the Sentencing Commission removed the residual clause and added a specific list of crimes.

the motion as untimely and denied a certificate of appealability. We also denied a certificate of appealability.

### C. Successive 28 U.S.C. § 2255 Motion

On June 26, 2015, the Supreme Court held the ACCA residual clause definition of "violent felony," 18 U.S.C. § 924(e)(2)(B)(ii)—which is identical to the Guidelines residual clause "crime of violence" definition—unconstitutionally vague. *Johnson*, 135 S. Ct. at 2556–60. Less than a year later, the Court held that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016). In light of *Johnson* and *Welch*, we granted D'Antoni permission to file a successive § 2255 motion. He maintained his career-offender sentence was invalid because: (1) *Johnson* applied to invalidate § 4B1.2's residual clause as unconstitutionally vague; and (2) his prior conviction for conspiracy to kill a government witness could only be considered a crime of violence under the residual clause and thus no longer qualified as a predicate offense. The district court stayed the proceedings until the Supreme Court decided *Beckles* on March 6, 2017. In *Beckles*, the Court held that the advisory Sentencing Guidelines are not subject to vagueness challenges, and therefore, at least the post-*Booker* advisory version of § 4B1.2(a)'s residual clause is not void for vagueness. 137 S. Ct. at 893–95.

Relying on *Beckles*, the government argued *Johnson* did not apply retroactively to render the residual clause of the pre-*Booker* mandatory Guidelines unconstitutionally vague. Alternatively, the government suggested that even if *Johnson* retroactively voided the mandatory Guidelines residual clause, D'Antoni's prior conviction for conspiring to kill a government witness still qualified as a predicate offense because

§ 4B1.2's application notes listed conspiracy, murder, and manslaughter as crimes of violence.

On January 17, 2018, the district court denied D'Antoni's petition. It concluded that, based on *Beckles*, D'Antoni could not make a vagueness challenge to the pre-*Booker* mandatory Guidelines, and therefore, his prior conspiracy conviction remained a crime of violence pursuant to the residual clause. However, the court granted a certificate of appealability.

### D. This Appeal

D'Antoni timely filed a notice of appeal, which we stayed pending our decision in *Cross*. In *Cross*, we held that "*Beckles* applies only to advisory guidelines, not to mandatory sentencing rules," and therefore, "the guidelines residual clause is unconstitutionally vague insofar as it determined mandatory sentencing ranges for pre-*Booker* defendants." 892 F.3d at 291; *see also id.* at 306 ("[U]nlike the advisory guidelines, the mandatory guidelines implicated the 'twin concerns' of the vagueness doctrine. The mandatory guidelines are thus subject to attack on vagueness grounds." (citation omitted)). We also held that *Johnson* applies retroactively to § 2255 motions challenging the constitutionality of the mandatory Guidelines residual clause on collateral review. *Id.* at 306–07.

In light of *Cross*, on September 13, 2018, the government filed a statement of position. It emphasized that *Cross* did not "resolve the government's argument … that D'Antoni remains a career offender even after *Johnson*, based on the validity of his conspiracy conviction as a listed offense" in § 4B1.2's commentary. Additionally, the government pointed out that

"*Cross* did not have occasion to address the specific retroactivity requirement for successive § 2255 motions like D'Antoni's, which are governed by 28 U.S.C. § 2255(h)(2)."

## II. Discussion

Because this appeal asks us to resolve a question of law, we review the district court's denial of D'Antoni's § 2255 motion de novo. *Delatorre v. United States*, 847 F.3d 837, 843 (7th Cir. 2017).

The government emphasizes that the sentencing court did not mention the residual clause when it determined the conspiracy to kill a government witness conviction qualified as a predicate crime of violence for purposes of considering D'Antoni a career offender. It asks us to deny relief because, in its view, there is nothing in the record to show that D'Antoni was actually sentenced under the residual clause, as opposed to under the elements clause or § 4B1.2's commentary. It points out that the application notes list conspiracy, murder, and manslaughter as examples of "crime[s] of violence," and therefore asserts that "as applied to D'Antoni, the residual clause cannot be unconstitutionally vague." We disagree. Given our holdings in *Cross* and *Rollins*, we must grant relief.[2]

---

[2] The government also contends *Cross* does not apply because *Cross* "involved two initial § 2255 petitioners," while D'Antoni is a successive petitioner. It points out that because this is a successive petition, D'Antoni can get relief only if the Supreme Court itself makes a previously unavailable new rule of constitutional law retroactive to cases on collateral review. *See* 28 U.S.C. § 2255(h)(2). The government posits that no Supreme Court opinion has addressed the constitutionality of the residual clause in the pre-*Booker* mandatory Guidelines, so D'Antoni cannot benefit from *Cross*. However, as the government concedes, "the broadly worded reasoning in *Cross* precludes this particular argument." *See Cross*, 892 F.3d at

The government insists that "the relevant commentary did not purport to interpret the former residual clause," but instead "sets out a definition of 'crime of violence' in addition to the definition in Section 4B1.2's main text." It thus claims that "the offenses listed in the application notes … qualify as crimes of violence without determining whether each offense satisfied a discrete portion of USSG § 4B1.2(1)'s definition." The government is wrong. Such a view of Guidelines commentary is expressly foreclosed by the Supreme Court's decision in *Stinson v. United States*, 508 U.S. 36 (1993), and our interpretation of *Stinson* in *Rollins*.

In *Rollins*, we considered "whether [a] conviction counts as a predicate crime of violence based on [an] application note *alone*." 836 F.3d at 742. We began by explaining that "'there are "'three varieties' of text in the Guidelines": (1) the "'guideline provision[s] [themselves],'" which "'are the equivalent of legislative rules adopted by federal agencies'" and must be "submitted to Congress" for review and approval; (2) "the Sentencing Commission's policy statements, which have much the same effect as the Guidelines themselves"; and (3) "the Commission's commentary," which "interpret[s] the Guidelines and explain[s] how they are to be applied." *Id.* (quoting and citing *Stinson*, 508 U.S. at 41–42, 45). We thus reasoned that "application notes are *interpretations of*, not *additions to*, the Guidelines themselves," and "an application note has no *independent* force." *Id.* Consequently, "the list of qualifying crimes in application note 1 to § 4B1.2 is enforceable only as

307 (holding that we treat *Johnson* as "retroactive[] when applied to the mandatory guidelines"). Thus, the government admits that it "asserts the argument solely to preserve it for any potential further review."

an interpretation of the definition of the term 'crime of violence' in the guideline itself," and "[m]ore specifically," as an interpretation of § 4B1.2's "*residual clause.*" *Id.*

The government next maintains that even if the commentary was "intended to interpret the former residual clause, [its] terms still defeat a vagueness challenge" because it "specifically identifies offenses that qualify as crimes of violence." Therefore, according to the government, D'Antoni was not "deprived of fair notice or subjected to arbitrary enforcement by the straightforward application of the commentary's express terms." Put another way, the government contends that "[a]pplying the clearly stated offenses in the commentary … produces none of the constitutional concerns that the vagueness doctrine is designed to prevent."

*Cross* and *Rollins* together preclude this approach. In *Cross*, we excised the residual clause from the pre-*Booker* Guidelines as unconstitutionally vague. 892 F.3d at 306. And in *Rollins*, we explained that Guidelines commentary "has no legal force standing alone." 836 F.3d at 742. Thus, once "the residual clause drops out," the application note's list of crimes is no longer interpreting any part of § 4B1.2's definition of "crime of violence." *Id.* It is therefore "in effect *adding to* the definition[,] [a]nd that's *necessarily* inconsistent with the text of the guideline itself." *Id.*; *see also United States v. Soto-Rivera*, 811 F.3d 53, 60 (1st Cir. 2016) ("There is simply no mechanism or textual hook in the Guideline that allows us to import offenses not specifically listed therein into § 4B1.2(a)'s definition of 'crime of violence.' With no such path available …, doing so would be inconsistent with the text of the Guideline."); *United States v. Bell*, 840 F.3d 963, 968 (8th Cir. 2016) (same), *overruled*

*on other grounds by United States v. Swopes*, 886 F.3d 668 (8th Cir. 2018) (en banc).[3]

The government seeks to get around *Rollins* by arguing that, after *Beckles*, we are no longer bound by its holding. It

---

[3] In *United States v. Miller*, 868 F.3d 1182 (10th Cir. 2017), the Tenth Circuit adopted the government's view. That court declined to address the question we answered in *Cross*—whether the pre-*Booker* Guidelines are amenable to vagueness challenges—instead holding that regardless, the defendant could not "mount a vagueness challenge to his enhanced sentence, because the enumeration of [his prior conviction] in the commentary to the career-offender guideline sufficiently narrows the application of the residual clause to [the defendant's] conduct." *Id.* at 1187. The court explained that because the defendant's "conduct was clearly proscribed, he [could] not complain he was denied fair notice of the possibility of enhanced punishment," and "there was no risk of arbitrary enforcement by judges." *Id.* at 1189. Concurring in *Beckles*, Justices Ginsburg and Sotomayor also advocated for this method of analyzing vagueness challenges to the Guidelines. *See Beckles*, 137 S. Ct. at 898 (Ginsburg, J., concurring) ("[B]ecause [the defendant's] conduct was 'clearly proscribed,' he … 'cannot complain of the vagueness of the [guideline] as applied to the conduct of others.'" (last alteration in original) (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18–19 (2010))); *id.* (Sotomayor, J., concurring) ("[T]he commentary under which [the defendant] was sentenced was not unconstitutionally vague."). The Tenth Circuit asserts that we erred in *Rollins* by "first excis[ing] the residual clause and then conclud[ing] the commentary listing [the prior conviction] was not an interpretation of the elements or enumerated offenses clauses." *Miller*, 868 F.3d at 1188 n.4. In the Tenth Circuit's view, our path "confuses the 'normal order of operations' in analyzing vagueness challenges," as "the Supreme Court 'has routinely rejected, in a variety of contexts, vagueness claims where a clarifying construction rendered an otherwise enigmatic provision clear as applied to the challenger.'" *Id.* at 1188 (quoting *Beckles*, 137 S. Ct. at 897 n.* (Ginsburg, J., concurring)). The government asks us to rely on the Tenth Circuit's decision in *Miller* (and Justices Ginsburg's and Sotomayor's concurrences in *Beckles*) to affirm D'Antoni's sentence. We cannot do so, however, because *Cross* and *Rollins* foreclose this approach.

suggests we should instead rely on our 2012 decision in *United States v. Raupp*, in which we held that conspiracy to commit robbery is a "crime of violence" because "conspiracy" is listed in § 4B1.2's commentary, and "the text of § 4B1.2(a) does not tell us, one way or another, whether inchoate offenses are included or excluded." 677 F.3d 756, 759 (7th Cir. 2012).

To be sure, we decided *Rollins* in conjunction with *United States v. Hurlburt*, 835 F.3d 715 (7th Cir. 2016) (en banc), where we held that after *Johnson*, the post-*Booker* advisory Guidelines residual clause is unconstitutionally vague. *Id.* at 721. And *Beckles* expressly abrogated *Hurlburt*. Indeed, while we overruled *Raupp* in *Rollins*, *see* 836 F.3d at 743, in *Hill v. United States*, we commented that *Beckles*'s "[e]limination of vagueness challenges to the Guidelines undermines *Rollins* as well as *Hurlburt*, so we treat *Raupp* … as having unimpaired precedential force." 877 F.3d 717, 719 (7th Cir. 2017).

As D'Antoni aptly observes, however, "*Beckles* does not touch *Rollins'*[s] holding about the role of Guidelines commentary." The government too concedes that "*Beckles* did not reach the commentary issue." And moreover, our statement in *Hill* is not controlling because it suggested that *Beckles* broadly eliminated all vagueness challenges. But we decided *Hill* before *Cross*, and in *Cross*, we revived vagueness challenges—like the one here—to the pre-*Booker* residual clause. 892 F.3d at 306. While we recognize other circuits have held to the contrary and concluded, post-*Beckles*, that post-conviction relief is not available to defendants sentenced under the

mandatory Guidelines residual clause,[4] we are, of course, bound by *Cross*.

In short, after *Cross*, for cases involving defendants sentenced pursuant to the pre-*Booker* mandatory Guidelines, we face the same situation we faced in *Rollins*. In such instances, "our holding in *Raupp* has lost its tether to the text of the career-offender guideline," and "*Raupp*'s premise" — "that the application note's list of qualifying crimes is a valid interpretation of the guideline's residual clause" — "has been undone by intervening legal developments." *Rollins*, 836 F.3d at 739, 743. Rather, "because the residual clause in § 4B1.2[(1)(ii) (1990)] is unconstitutional, the application note's list of qualifying crimes is inoperable and cannot be the basis for applying the career-offender enhancement." *See id.* at 742.

Finally, the government argues the sentencing court may have considered D'Antoni's conspiracy to kill a government witness conviction a crime of violence under § 4B1.2's elements clause because the object of the conspiracy fits within that clause. Whether a crime fits within the elements clause "begins and ends with the elements of the crime." *Flores v. Ashcroft*, 350 F.3d 666, 671 (7th Cir. 2003) (discussing the identical elements clause in 18 U.S.C. § 16(a)). D'Antoni was convicted of conspiracy under 18 U.S.C. § 371, which required the

---

[4] *See United States v. Pullen*, 913 F.3d 1270, 1283–84 (10th Cir. 2019); *United States v. Blackstone*, 903 F.3d 1020, 1028 (9th Cir. 2018); *Robinson v. United States*, 736 F. App'x 599, 599 (6th Cir. 2018) (citing *Raybon v. United States*, 867 F.3d 625, 630 (6th Cir. 2017)); *Russo v. United States*, 902 F.3d 880, 883–84 (8th Cir. 2018); *United States v. Green*, 898 F.3d 315, 321–23 (3d Cir. 2018); *Upshaw v. United States*, 739 F. App'x 539, 541 (11th Cir. 2018) (per curiam) (citing *In re Griffin*, 823 F.3d 1350, 1354–56 (11th Cir. 2016) (per curiam)); *United States v. Brown*, 868 F.3d 297, 301–03 (4th Cir. 2017).

government to prove three elements: "(1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense." *United States v. Hills*, 618 F.3d 619, 637 (7th Cir. 2010) (quoting *United States v. Cyprian*, 23 F.3d 1189, 1201 (7th Cir. 1994)). Critically, none of those elements required the government to prove "the use, attempted, use, or threatened use of physical force." U.S.S.G. § 4B1.2(1)(i) (1990); *cf. Bush v. Pitzer*, 133 F.3d 455, 457 (7th Cir. 1997) ("An offense such as conspiracy [does not have] the use of physical force as an element … ."). Thus, § 371 conspiracy is not a "crime of violence" as defined by the elements clause.[5]

In sum, because D'Antoni's conspiracy conviction did not include force as an element, its only possible connection to § 4B1.2's definition of "crime of violence" was the residual clause. But as noted above, *Cross* excised the residual clause from the pre-*Booker* mandatory Guidelines, and without the residual clause, the application notes have no legal force. D'Antoni is therefore entitled to resentencing.

---

[5] We would reach a different conclusion if the government had to prove the elements of the underlying offense. *See United States v. Gloss*, 661 F.3d 317, 319 (6th Cir. 2011) ("If a conviction for … conspiracy requires the government to prove the elements of the underlying violent felony, such a conviction will itself qualify as a violent felony under the [elements clause of the ACCA]. If, by contrast, the government may obtain a conviction by proving only that the defendant agreed to participate in violent crime or solicited it—and not that some person committed or attempted to commit the underlying offense—conspiracy … tends to be outside the reach of the [elements clause], and generally will be deemed a violent felony only if it qualifies under the residual clause." (citations omitted)).

### III. Conclusion

For the foregoing reasons, we REVERSE the judgment of the district court and REMAND with instructions to grant D'Antoni's successive § 2255 motion and for resentencing in accordance with this opinion.