In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 19-1622 & 19-1673

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DUPRECE JETT and DAMION MCKISSICK,

*Defendants-Appellants.*

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cr-00001 — **Tanya Walton Pratt**, *Judge.*

ARGUED OCTOBER 27, 2020 — DECIDED DECEMBER 15, 2020

Before SYKES, *Chief Judge*, and KANNE and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. A jury convicted Duprece Jett and Damion McKissick of Hobbs Act conspiracy and attempted robbery. In a previous appeal, we reversed the defendants' attempted-robbery convictions and remanded for resentencing on the conspiracy count. *United States v. Jett*, 908 F.3d 252 (7th Cir. 2018). The defendants now appeal from their resentencings. They claim the district court erred under the

Guidelines by using the preponderance-of-the-evidence standard, and not the higher beyond-a-reasonable-doubt standard, to decide whether they conspired to commit the "object offenses" of the conspiracy. They also fault the district court for increasing their original sentences on the conspiracy count without explaining why. On the Guidelines issue, we hold that the district court erred but that its error was harmless. We find no error in the district court's sentencing explanation. We thus affirm the defendants' new sentences.

## I. Background

We described the facts behind the defendants' convictions at length in our opinion addressing the defendants' first appeal. *Jett*, 908 F.3d at 259–63. We repeat those facts here only as they relate to the current appeal.

### A. Convictions

Two armed men dressed in 1970s-themed disguises robbed three cash-and-check stores in the Indianapolis area in the second half of 2015. An anonymous tip led officers to Jett and McKissick. Officers began surveilling Jett and McKissick and soon determined that they and a third man, Earl Walker, were about to commit a fourth robbery. The officers decided to intervene. On the morning of the anticipated fourth robbery, Walker and McKissick were driving near a credit union in a stolen car. The officers tried to pull them over, but Walker (the driver) and McKissick sped off. Following a high-speed chase, the officers arrested Jett, McKissick, and Walker.

A federal grand jury indicted the defendants and Walker (who is not part of this appeal) on two counts: (1) conspiracy in violation of the Hobbs Act, 18 U.S.C. § 1951(a); and (2) attempted bank robbery "by force and violence, or by

intimidation," *id.* § 2113(a). The government alleged four "overt acts" for Count 1: the three completed robberies and the attempted robbery that preceded the defendants' arrest. Before trial, the defendants moved for a special verdict form requiring the jury to find unanimously that the defendants had committed one of the overt acts, and to agree on which overt act they had committed. The district court denied the motion.

At trial, the government introduced a range of evidence, including: surveillance footage of the three robberies; text messages between Jett and McKissick from the night before the attempted robbery; cell-tower data placing the defendants near the robberies; testimony that the bright orange vests that the robbers wore during the first robbery matched Jett's work clothes; evidence of burnt items found at McKissick's home, including ski masks, gloves, and a backpack, all of which matched the robbers' gear; evidence that the defendants' DNA was found on a ski mask, backpack, and airsoft pistol recovered from the stolen car that McKissick and Walker had used to flee from officers; incriminating statements that McKissick made at the police station; and an incriminating phone call between McKissick and his wife. The government did not produce an eyewitness who could identify Jett or McKissick as the robbers. The jury convicted the defendants on both counts.

**B. Initial Sentencings**

Following their convictions at trial, the district court sentenced Jett and McKissick to 293 months' imprisonment. McKissick received 203 months on Count 1 and 90 months on Count 2, to run consecutively for a total of 293 months. Jett received 209 months on Count 1 and 84 months on Count 2,

to run consecutively for a total of 293 months. The defendants' sentences were at the high end of the advisory Guidelines range of 235 to 293 months, which resulted from total offense levels of 33 and criminal history categories of VI. The court calculated the defendants' offense levels by separately grouping the three robberies and the attempted robbery, *see* USSG § 1B1.2(d), and then using the multiple-count adjustment rules, *see* USSG §§ 1B1.1(a)(4), 3D1.1(a), 3D1.4, to increase the highest offense level among the groups (30) by three levels. The defendants' criminal history categories were VI because the Guidelines classified them as career offenders. Otherwise, their criminal history categories would have been IV.

During both defendants' sentencings, the court commented on the strength of the evidence at trial. At McKissick's sentencing, the court stated that "the evidence at trial clearly establishes that Mr. McKissick and Mr. Jett committed the first three robberies." The court also remarked, in reference to "issues of cross-racial identification" raised at trial, that it had "no doubt, whatsoever, that Mr. McKissick was the robber that was identified" at trial. At Jett's sentencing hearing, the court commented, apparently in response to Jett's allocution in which he continued to maintain his innocence, that it was "100 percent certain that Mr. Jett is guilty and that the participation that he invoked in during this robbery -- the Court is aware of exactly what Mr. Jett did."

## C. First Appeal

The defendants appealed their convictions, asserting various trial errors. We reversed the defendants' attempted-robbery convictions because there was no evidence of force, violence, or intimidation, but we affirmed in all other respects. *Jett*, 908 F.3d at 259. Relevant here, we rejected the defendants'

argument that the district court erred in refusing to instruct the jury on overt acts because "a Hobbs Act conspiracy does not have an overt-act requirement." *Id.* at 265. We remanded with instructions for the district court to enter a judgment of acquittal on Count 2 and resentence the defendants. *Id.* at 276.

Like the district court, we remarked at various times on the strength of the evidence against Jett and McKissick at trial. We did so, for example, when rejecting the defendants' argument that the admission of certain expert testimony required a new trial:

> The evidence against Jett and McKissick on Count 1 was plenty persuasive without [the expert's] interpretation of the text messages. The government needed only to prove that they conspired to commit bank robbery, and it admitted surveillance footage that a jury could easily conclude showed Jett and McKissick actually committing the bank robberies together. Cell-phone data further confirmed that both men were in the area of the check-and-cash locations around the times they were robbed. The government also introduced evidence of burned items matching what the robbers used at McKissick's home and McKissick's incriminating statements at the stationhouse.

*Id.* at 267.

**D. Resentencings**

On remand for resentencing on Count 1, a probation officer calculated the defendants' advisory Guidelines ranges as 188 to 235 months. Although Count 2 was gone, the probation

officer concluded that the defendants' total offense levels were still 33 because the same grouping analysis and multiple-count adjustment applied based on the three robberies and the attempted robbery. At the same time, the defendants' criminal history categories were now IV rather than VI because of our intervening decision in *D'Antoni v. United States*, 916 F.3d 658 (7th Cir. 2019), which held that a conspiracy conviction that does not include force as an element is not a crime of violence for purposes of the career-offender enhancement. *Id.* at 665.

Both defendants objected to the probation officer's proposed grouping analysis. They argued that only a jury could decide whether they had committed the four conspiracies underlying their convictions on Count 1. The defendants relied heavily on Application Note 4 to USSG § 1B1.2(d), which provides, for purposes of grouping conspiracy offenses, that grouping "should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense." For its part, the government argued that grouping was appropriate as long as the court found by a preponderance of the evidence that the defendants had committed the robberies and attempted robbery.

The district court overruled the defendants' grouping objections. It agreed with the government that it could group the conspiracies if it found by a preponderance of the evidence that the defendants had committed each of them. It found that they had. At Jett's resentencing (which took place before McKissick's), the court stated: "There was more than a preponderance of the evidence. It was evidence beyond a

reasonable doubt, and very strong direct and circumstantial evidence of Mr. Jett's participation in the conspiracy and all of these acts in the conspiracy." It then summarized the trial evidence. Because "the evidence at trial was sufficient to show that Mr. Jett and Mr. McKissick and Mr. Walker were co-conspirators in these—in the conspiracy," the court overruled Jett's grouping objection. The court similarly overruled McKissick's grouping objection and found that the evidence supported his commission of each conspiracy: "[C]learly, the evidence supports a conspiracy of the three robberies which were completed, as well as the conspiracy to commit a fourth robbery."

After overruling the defendants' objections, the court adopted the probation officer's recommended advisory Guidelines range of 188 to 235 months for both defendants. Jett asked the court to sentence him "within the sentencing guidelines, at the low end, where he would have been sentenced—or where he was sentenced the last time." McKissick asked for a within-Guidelines sentence.

The court sentenced both defendants to 230 months' imprisonment on Count 1. The court's explanation for the defendants' new sentences was essentially the same as its explanation for the defendants' first sentences. Both times, the court referenced various § 3553(a) factors but focused heavily on the seriousness of the offenses and the defendants' criminal histories and personal characteristics.

At Jett's resentencing, the court remarked yet again on the strength of the evidence, saying, "the Court is 100 percent certain that Mr. Jett conspired with Mr. McKissick and Walker and participated in these acts, these crimes. And the Court is confident of his participation and involvement in the three

actual robberies and the substantial steps towards the fourth robbery.”

The defendants now appeal their new sentences.

## II. Discussion

The defendants argue that the district court committed two procedural errors when resentencing them. First, they say the court erred under the Guidelines by failing to apply the reasonable-doubt standard when making factual findings about the four distinct overt acts underlying their convictions on Count 1. Second, they say the court failed to adequately explain why it increased their original sentences on Count 1 at resentencing. We review procedural issues at sentencing de novo. *United States v. Salgado*, 917 F.3d 966, 969 (7th Cir. 2019).

### A. Guidelines Issue

When a defendant has multiple counts of conviction, the Guidelines instruct the sentencing court to separately group the counts and calculate the defendant's total offense level by taking the highest offense level from among the groups and increasing it based on the number and seriousness of the other groups. USSG §§ 1B1.1(a)(4), 3D1.1(a), 3D1.4.

These grouping rules apply to defendants convicted on one count of conspiring to commit multiple offenses. USSG § 1B1.2(d) provides: “A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit.” Application Note 4 elaborates on how a court determines if the defendant conspired to commit each of the offenses:

> Particular care must be taken in applying subsection (d) because there are cases in which the verdict or plea does not establish which offense(s) was the object of the conspiracy. In such cases, subsection (d) should only be applied with respect to an object offense alleged in the conspiracy count if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense.

USSG § 1B1.2, comment. (n.4). When adding § 1B1.2(d) and the application note to the Guidelines in 1989, the Sentencing Commission explained that § 1B1.2(d) requires a judge to make findings beyond a reasonable doubt. USSG App. C, Vol. I, ¶ 75. The rationale was that "[a] higher standard of proof should govern the creation of what is, in effect, a new count of conviction." *Id.*

We have not previously addressed whether USSG § 1B1.2(d) requires a sentencing judge to apply the reasonable-doubt standard. Every other circuit to address the issue has held that it does. *United States v. Jones*, 699 F. App'x 325, 326 (5th Cir. 2017) (per curiam); *United States v. Bradley*, 644 F.3d 1213, 1300 (11th Cir. 2011); *United States v. Robles*, 562 F.3d 451, 455 (2d Cir. 2009) (per curiam); *United States v. Smith*, 267 F.3d 1154, 1160 (D.C. Cir. 2001); *United States v. Jackson*, 167 F.3d 1280, 1285 (9th Cir. 1999); *United States v. Conley*, 92 F.3d 157, 168 (3d Cir. 1996).

We join those circuits today and hold that USSG § 1B1.2(d) requires a sentencing judge to use the reasonable-doubt standard, and not merely the preponderance-of-the-evidence standard, to decide if a defendant conspired to commit each "object offense" of the conspiracy. Application Note 4 to

USSG § 1B1.2 asks if a judge, "sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense." There is only one standard of proof that a "trier of fact" must use to "convict the defendant," and that is reasonable doubt. The Supreme Court has explained that Guidelines commentary "is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). We see no reason why Application Note 4 is an impermissible reading of USSG § 1B1.2(d). As such, it is binding under *Stinson*.

The government does not dispute that USSG § 1B1.2(d) requires a sentencing judge to make findings beyond a reasonable doubt, nor does it dispute that the district court erred by applying the lower preponderance-of-the-evidence standard. Still, the government maintains that the district court's error does not require reversal because it was not plain error, and in any event, it was harmless. The defendants say they preserved this issue below, so de novo review applies. We need not decide what standard of review applies because, even if de novo review applies, the court's error was harmless.

An error is harmless if it does not affect a defendant's "substantial rights." Fed. R. Crim. P. 52(a). "To prove harmless error, the government must be able to show that the Guidelines error 'did not affect the district court's selection of the sentence imposed.'" *United States v. Abbas*, 560 F.3d 660, 667 (7th Cir. 2009) (quoting *United States v. Anderson*, 517 F.3d 953, 965 (7th Cir. 2008)). This "removes the pointless step of returning to the district court when we are convinced that the sentence the judge imposes will be identical to the one we remanded." *Id.*

The district court's Guidelines error was harmless because the court made clear that it would have imposed the same sentence on each defendant even if the higher reasonable-doubt standard applied. The court said so explicitly for Jett, commenting at his resentencing that there was "evidence beyond a reasonable doubt … of Mr. Jett's participation in the conspiracy and all of these acts in the conspiracy," such that "the conduct for the entirety of the conspiracy" was covered under § 1B1.2(d). At the same hearing, the court said it was "100 percent certain that Mr. Jett conspired with Mr. McKissick and Walker and participated in these acts, these crimes." The court's comments leave no doubt that it would have applied the same grouping analysis for Jett if it had correctly found that § 1B1.2(d) requires the reasonable-doubt standard.

The same holds true for McKissick, even though the court never explicitly said that there was evidence beyond a reasonable doubt that he had committed all four conspiracies. The court commented repeatedly at the defendants' initial sentencing hearings and at their resentencings on the strength of the evidence against McKissick. At McKissick's initial sentencing, the court said it had "no doubt, whatsoever, that Mr. McKissick was the robber that was identified" at trial. At his resentencing, the court found that "clearly, the evidence supports a conspiracy of the three robberies which were completed, as well as the conspiracy to commit a fourth robbery." Finally, the court commented at Jett's resentencing that it was "100 percent certain that Mr. Jett conspired *with Mr. McKissick* and Walker and participated in these acts, these crimes." (Emphasis added).

And these comments were justified. As we observed in the defendants' first appeal, there was "convincing evidence of Jett's and McKissick's guilt," including surveillance footage of the robberies; confirmatory cell-phone data; incinerated items at McKissick's home that matched items the robbers used; testimony about the high-speed chase leading to McKissick's arrest; and McKissick's incriminating stationhouse statements. *Jett*, 908 F.3d at 271. From the surveillance footage alone, "a jury could easily conclude [that] Jett and McKissick actually commit[ed] the bank robberies together." *Id.* at 267. Importantly, there is no reason to believe that the evidence was any less persuasive against McKissick than it was against Jett. If anything, there was more evidence against McKissick, including the burnt items found at his home and his incriminating statements.

On this record, the district court's error was harmless as to both defendants. The court's comments at the initial sentencings and the resentencings, along with the overwhelming strength of the evidence against both defendants, convince us that remanding for the court to reconsider, under the reasonable-doubt standard, whether the defendants committed each of the underlying overt acts would be a "pointless" exercise. *Abbas*, 560 F.3d at 667.

## B. Sentencing Explanation

The defendants' next argument is that the district court failed to explain why the same § 3553(a) factors and evidence warranted higher sentences on Count 1 at resentencing.

A district court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*,

552 U.S. 38, 50 (2007). "[I]t is not our role to justify a sentence that lacks a sufficient explanation with our best guess for why the court imposed the sentence that it did." *United States v. Titus*, 821 F.3d 930, 935 (7th Cir. 2016).

Again, the parties dispute whether plain-error or de novo review applies. We need not resolve this dispute because there was no error, let alone plain error.

The defendants rely on our recent decision in *United States v. Ballard*, 950 F.3d 434 (7th Cir. 2020), for the proposition that a district court must explain a difference between an initial sentence and subsequent sentence on the same count. In *Ballard*, we held that the district court "committed procedural error by not providing an adequate explanation for the major upward departure from the Guidelines range on resentencing." *Id.* at 437. At the defendant's first sentencing, his advisory Guidelines range was 180 to 210 months. *Id.* at 435. The district court imposed a sentence of 232 months—a 10% upward departure. *Id.* at 436. The defendant appealed, and we vacated his sentence because the district court had erroneously applied a sentencing enhancement. *Id.* On remand, without the sentencing enhancement, the defendant's advisory Guidelines range was much lower: 33 to 41 months. *Id.* Citing the same § 3553(a) factors, the district court sentenced the defendant to 108 months' imprisonment. *Id.* That was a 160% upward departure. *Id.* The defendant again appealed, and we agreed with him that the district court had failed to adequately explain its sentence. *Id.* at 437. First, "[t]he court provided no explanation for why consideration of the same factors warranted a much greater departure on resentencing." *Id.* at 437. Second, "regardless of the proportional difference between the first and second sentencing departures, a 160

percent increase is an abnormally extreme departure from the Guidelines recommendation," and "the district court owed a significant justification for that departure." *Id.* at 437–38. Yet the district court's explanation was "essentially identical to the explanation provided for a much less extreme departure in the original sentence." *Id.* at 437. We again vacated and remanded for resentencing. *Id.* at 439.

*Ballard* does not support the defendants' position—indeed, it strongly undercuts it. In our case, the district court did the opposite of what the district court had done in *Ballard*. At the defendants' first sentencings, the court sentenced them both at the high end of the Guidelines range. On remand, it sentenced them just below the high end of the Guidelines range. In *Ballard*, what mattered was how the sentences compared to the applicable Guidelines range. Here, the sentences fell at almost the same spot in the Guidelines ranges. There was no procedural error under *Ballard*.

Beyond *Ballard*, the defendants provide no authority for their argument that the district court had to give them the same sentences on Count 1 at resentencing or explain the difference. The Supreme Court has bluntly rejected the argument that a sentencing judge must consider each count in isolation when fashioning a sentence: "Nothing in the law requires such an approach." *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017). Indeed, the "sentencing package" doctrine exists to allow a sentencing judge to reconfigure a sentence for the remaining counts when an appellate court reverses a conviction on some but not all counts following the initial sentencing. *Id.*; *Pepper v. United States*, 562 U.S. 476, 507 (2011). Here, we vacated the defendants' convictions on Count 2 and remanded for resentencing on Count 1, even though the

district court had already sentenced the defendants on Count 1. That is because, with Count 2 gone, the sentencing calculus changed. The advisory Guidelines range was also different, which further altered the calculus. Put simply, there is no legal basis for the defendants' argument that the district court had to give them the same sentences on Count 1 at resentencing or explain the difference. The district court did not err by failing to explain why the defendants' new sentences on Count 1 did not match their initial sentences on Count 1. *See United States v. Kappes*, 782 F.3d 828, 864 (7th Cir. 2015) (noting that sentencing judges need not address meritless mitigation arguments at sentencing).

AFFIRMED.